James A. Morris, Esq. (CSBN 296852)
*jmorris@jamlawyers.com*
Shane E. Greenberg, Esq. (CSBN 210932)
*sgreenberg@jamlawyers.com*
**MORRIS LAW FIRM**
4111 W. Alameda Avenue, Suite 611
Burbank, CA 91505
Tel:    (747) 283-1144
Fax:    (747) 283-1143

Adam M. Goffstein
**GOFFSTEIN LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:    (314) 455-7278
*adam@goffsteinlaw.com*
*(Pro Hac Vice Pending)*

Daniel J. Orlowsky
**ORLOWSKY LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:    (314) 455-7375
*dan@orlowskylaw.com*
*(Pro Hac Vice Pending)*

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KUTZA on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>Defendant. | **CASE NO.:  3:18-cv-3534**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Brian Kutza ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Williams-Sonoma, Inc. (otherwise referred to as "Defendant" or "Williams Sonoma").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1.      This is a class action lawsuit against Defendant Williams-Sonoma, Inc. for selling its household and personal care products as "natural" when, in fact, they contain unnatural and/or synthetic ingredients.

2.      Founded in 1956, Williams-Sonoma, Inc. is an American publicly traded consumer retail company that is headquartered in San Francisco, California.  Williams-Sonoma, Inc. operates a portfolio of brands including Williams Sonoma, which sells upscale products for the kitchen and home.  Williams Sonoma's products range from cookware to household and personal care products that include soaps, lotions, cleaning essentials, and other home keeping products.

3.      Among other purportedly "natural" products, Defendant develops, manufactures, markets, and sells a variety of household and personal care products, including:

- Williams Sonoma Fleur de Sel Hand Soap

- Williams Sonoma Fleur de Sel Dish Soap

- Williams Sonoma Fleur de Sel All-Purpose Cleaner

- Williams Sonoma Fleur de Sel Countertop Spray

- Williams Sonoma Fleur de Sel Hand Lotion

- Williams Sonoma Fleur de Sel Room Spray

- Williams Sonoma French Lavender Hand Soap

- Williams Sonoma French Lavender Dish Soap

- Williams Sonoma French Lavender All-Purpose Cleaner

- Williams Sonoma French Lavender Countertop Spray

- Williams Sonoma French Lavender Hand Lotion

- Williams Sonoma French Lavender Room Spray

- Williams Sonoma Frosted Clove Hand Soap

- Williams Sonoma Frosted Clove Hand Lotion

- Williams Sonoma Frosted Clove Dish Soap

- Williams Sonoma Frosted Clove Room Spray

- Williams Sonoma Lemongrass Ginger Hand Soap

- Williams Sonoma Lemongrass Ginger Dish Soap

- Williams Sonoma Lemongrass Ginger All-Purpose Cleaner

- Williams Sonoma Lemongrass Ginger Countertop Spray

- Williams Sonoma Lemongrass Ginger Hand Lotion

- Williams Sonoma Lemongrass Ginger Room Spray

- Williams Sonoma Meyer Lemon Hand Soap

- Williams Sonoma Meyer Lemon Dish Soap

- Williams Sonoma Meyer Lemon All-Purpose Cleaner

- Williams Sonoma Meyer Lemon Countertop Spray

- Williams Sonoma Meyer Lemon Hand Lotion

- Williams Sonoma Meyer Lemon Room Spray

- Williams Sonoma Pink Grapefruit Hand Soap

- Williams Sonoma Pink Grapefruit Dish Soap

- Williams Sonoma Pink Grapefruit All-Purpose Cleaner

- Williams Sonoma Pink Grapefruit Countertop Spray

- Williams Sonoma Pink Grapefruit Hand Lotion

- Williams Sonoma Pink Grapefruit Room Spray

- Williams Sonoma Pumpkin Spice Hand Soap

- Williams Sonoma Pumpkin Spice Hand Lotion

- Williams Sonoma Pumpkin Spice Dish Soap

- Williams Sonoma Spiced Chestnut Hand Soap

- Williams Sonoma Spiced Chestnut Hand Lotion

- Williams Sonoma Spiced Chestnut Dish Soap

- Williams Sonoma Spiced Chestnut Room Spray

- Williams Sonoma Sunny Orange Citrus Hand Soap

- Williams Sonoma Sunny Orange Citrus Dish Soap

- Williams Sonoma Sunny Orange Citrus Hand Lotion

- Williams Sonoma Sunny Orange Citrus Room Spray

- Williams Sonoma White Gardenia Hand Soap

- Williams Sonoma White Gardenia Dish Soap

- Williams Sonoma White Gardenia All-Purpose Cleaner

- Williams Sonoma White Gardenia Countertop Spray

- Williams Sonoma White Gardenia Hand Lotion

- Williams Sonoma White Gardenia Room Spray

- Williams Sonoma Winter Berry Hand Soap

- Williams Sonoma Winter Berry Hand Lotion

- Williams Sonoma Winter Berry Dish Soap

- Williams Sonoma Winter Berry Room Spray

- Williams Sonoma Winter Forest Hand Soap

- Williams Sonoma Winter Forest Hand Lotion

- Williams Sonoma Winter Forest Dish Soap

- Williams Sonoma Winter Forest Room Spray

(hereinafter the "Products").

4.      This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendant with respect to the marketing and sale of its household and personal care products, which are sold throughout the State of California and throughout the country.

5.      Defendant's marketing materials are replete with statements that the Products are natural, naturally derived or plaint-based, and the labels of all of the Products state the products are naturally derived.

6.     Williams Sonoma's website contains numerous claims that the Products "reflects our culinary roots with a bright, clean fragrance that blends into the kitchen naturally." Williams Sonoma also claims that: "Our exclusive essential oil blends nourish your skin with plant-based ingredients and contain no harmful parabens or chlorine."

7.     Defendant falsely, misleadingly, and deceptively labels the Products as "natural" and containing "Active Ingredients Derived from Natural Sources." The Products' ingredients are not "derived from natural sources" because they contain unnatural and/or synthetic ingredients, such as phenoxyethanol, methylisothiazolinone, sodium lauryl sulfate, sodium laureth sulfate, and/or caprylic/capric triglyceride.

8.     Plaintiff alleges that the Products' "natural" claims apply to all of the Products' ingredients and not just to the Products' "active" ingredients. A reasonable consumer would likely be deceived by these "natural" claims to believe that all of the ingredients in the Products are "derived from natural sources." The ingredient lists on the Products' labels and Defendant's website do not differentiate between "active" and "inactive" ingredients. Moreover, the Products contain numerous unnatural and/or synthetic "active" ingredients as well, such as citric acid, dimethicone, lauryl sulfate, potassium sorbate, sodium chloride, and sodium lauryl sulfate.

9.     ***Phenoxyethanol*** is one of the ingredients used in numerous Williams Sonoma Products. Phenoxyethanol is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses. Even short exposure could cause serious temporary or residual injury. It is toxic to the kidneys, the nervous system, and the liver. It is extremely hazardous in case of eye contact and very hazardous in case of skin

contact (defatting the skin and adversely affecting the central nervous system and peripheral nervous system, causing headaches, tremors, and central nervous system depression).  It is also very hazardous in case of ingestion or inhalation.  It degrades into substances that are even more toxic.  It is a Category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure.  Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to kidney function.  Phenoxyethanol is also Category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence.

10.     Case studies indicate that repeated exposure to phenoxyethanol results in acute neurotoxic effects, as well as chronic solvent-induced brain syndrome, constant irritability, impaired memory, depression, alcohol intolerance, episodes of tachycardia and dyspnea, and problems with balance and rash.

11.     Plaintiff purchased the Products in reliance on Defendant's representations that these Products are "natural," "plant-based" and contain "Active Ingredients Derived from Natural Sources."  They would not have purchased the Products had they known that they contained unnatural and/or synthetic ingredients.

12.     Plaintiff and the Class reasonably believed Defendant's false and misleading representations.  Defendant knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under California law.

13.     Plaintiff and the Class Members paid a premium for the Products over comparable products that did not purport to be "natural," "plaint-based," and contain "Active Ingredients Derived from Natural Sources."  Given that Plaintiff and Class Members paid a

premium for the Products based on Defendants' representations that they are "natural," "plant-based," and contain "Active Ingredients Derived from Natural Sources," Plaintiff and Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

14.     Plaintiff brings claims against Defendant individually and on behalf the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*; (4) violations of the Magnuson-Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) unjust enrichment; (8) negligent misrepresentation; and (9) fraud.

## **PARTIES**

15.     Plaintiff Brian Kutza is a California citizen who resides in Pasadena, California. During the class period alleged herein, Plaintiff Kutza purchased several Williams Sonoma Products on numerous occasions from a William Sonoma store in Los Angeles County. Plaintiff Kutza was specifically interested in purchasing natural household and personal care products.  Plaintiff Kutza's purchases include, without limitation, Williams Sonoma Meyer Lemon Hand Lotion, Williams Sonoma Meyer Lemon Hand Soap, Williams Sonoma White Gardenia Dish Soap, Williams Sonoma Fleur de Sel All-Purpose Cleaner, and Williams Sonoma Pink Grapefruit Countertop Spray.

16.     Plaintiff Kutza purchased the Williams Sonoma Products because he saw the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources." Plaintiff Kutza relied on Defendants' false, misleading, and deceptive representations that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources."  He understood this to mean that he was purchasing natural products that did not contain any unnatural and/or synthetic ingredients.  Plaintiff Kutza would not have purchased the Products if he had known that they contained unnatural and/or synthetic ingredients.  Plaintiff Kutza would purchase the products in the future if Defendant changed the composition of the Products so that they conformed to their "natural" and "Active Ingredients Derived from Natural Sources" labeling.

17.     Defendant, Williams-Sonoma, Inc. is a Delaware Corporation that has its principal place of business located at 3250 Van Ness Ave., San Francisco, California 94109. Defendant manufactures, markets, distributes, and sells the Williams Sonoma Products throughout the United States at its retail stores as well as direct to consumer through channels such as catalogs and e-commerce.  Williams-Sonoma, Inc. is publicly traded on the New York Stock Exchange and wholly owns and operates the Williams Sonoma brand.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

19.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

20.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.  Additionally, Defendant's principal place of business is in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District (*e.g.*, the research, development, design, and marketing of Williams Sonoma Products), and Defendant's principal place of business is in this District.

## COMMON FACTUAL ALLEGATIONS

22.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products, and everyday household products.  Defendant has capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

23.     The Federal Trade Commision ("FTC") has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[1]

24.     Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[2]

25.     The Products are manufactured and marketed by Defendant and sold in its William Sonoma stores nationwide as well as direct to consumer through channels such as catalogs and e-commerce.

26.     Defendant's marketing materials are replete with statements that the Products are natural, naturally derived, or plant-based, and the labels of all of the Products state the products are naturally derived.

27.     Defendant cultivates the Williams Sonoma image as a natural, non-synthetic, health and eco-friendly brand through its statements.  Williams Sonoma's website contains the following statement: "Completely natural ingredients leave the whole room with a fresh feeling and give you peace of mind too.  There are no dangerous chemicals like ammonia or chlorine to worry about, and no lauramide DEA or parabens either – only natural oils, essences and

---

[1] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[2] FDA, Small Business & Homemade Cosmetics:  Fact Sheet, *available at* https://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

cleansing elements. Because these soaps are biodegradable, they're good for the environment too. None of our products are tested on animals."[3]

28. Williams Sonoma's website contains numerous claims that its hand soaps and hand lotions "reflects our culinary roots with a bright, clean fragrance that blends into the kitchen naturally."

29. Williams Sonoma's website also contains numerous claims that its dish soaps and countertop sprays "reflects our culinary roots with a clean, simple scent that blends into the kitchen naturally."

30. With respect to its room spray products, Williams Sonoma claims its "uplifting seasonal spray is made with plant-based ingredients to create a light, clean scent that gently and evenly dissipates throughout the room."

31. The packaging for the Products misrepresents that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources." Williams Sonoma makes this claim on the packaging of all the Products:



WILLIAMS-SONOMA
green · écologique
Biodegradable / Ammonia, Phosphate & Chlorine Free / Not Tested on Animals / No Parabens / Active Ingredients Derived from Natural Sources / 25% Postconsumer Plastic

32. The labeling for the Products claims that they are "natural" and contain "Active Ingredients Derived from Natural Sources." However, each of these representations is false and misleading. Consumers understand the terms "natural" and "derived from natural sources"

_____

[3] William Sonoma website: https://www.williams-sonoma.com/shop/homekeeping/hand-dish-soaps-lotions/?cm_type=lnav&isx=0.0.5616

_____

to mean, "existing in nature and not made or caused by people; coming from nature" or "not having any extra substances or chemicals added; not containing anything artificial." Under this definition, and the expectations of reasonable consumers, the Products cannot be considered "natural" or "derived from natural sources" because they contain unnatural and/or synthetic ingredients.

33.     Representing that a product is "natural" and contains "Active Ingredients Derived from Natural Sources" is a statement of fact.

34.     Consumers reasonably believe that a product labeled "natural" and "derived from natural sources" does not contain unnatural and/or synthetic ingredients.

35.     Defendant's representations that its Williams Sonoma Products contain only natural ingredients are false, misleading, and deceptive because the Williams Sonoma Products contain multiple ingredients that are unnatural and/or synthetic.

36.     Defendant's Williams Sonoma Products contain the following non-exhaustive list of unnatural, synthetic, and/or chemical ingredients:

a. **Acrylamide/Ammonium Acrylate Copolymer** is a chemical substance that is a copolymer of acrylamide and ammoniumacrylate monomers.

b. **Alcohol Denat.:** Denatured alcohol is a mixture of ethanol (ethyl alcohol) with a denaturing agent. Ethanol is considered broadly toxic and linked to birth defects following excessive oral ingestion. Alcohol is a synthetic substance according to federal regulations. *See* 7. C.F.R. 205.603(a)(1).

c. **Ammonium Lauryl Sulfate** is a synthetic ammonium slat of sulfated ethoxylated lauryl alcohol.

_____

13
**COMPLAINT AND JURY TRIAL DEMAND**

d. **Benzisothiazolinone** is a chemical substance that can cause irritation to the skin, eyes, or lungs.  Exposure can lead to allergic contact dermatitis and skin sensitization.  The Scientific Committee on Consumer Safety (EU) has advised that it not be used in personal care items due to lack of data as well as its potential for skin sensitization.[4]

e. **Buteth-3** is a chemical substance that is a polyethylene glycol ether of butyl alcohol.

f. **Caprylic/Capric Triglyceride** is an artificial compound manufactured by hydrolyzing coconut oil, removing the free glycerin, and separating the medium chain length fatty acids by fractional distillation. The acids are then blended in the proper ratio and re-esterified with glycerin.  Glycerin is a synthetic substance according to federal regulations.  *See* 7. C.F.R. 205.605(b).

g. **Ceteareth-20** is a chemical ingredient.  It is the polyethylene glycol either of cetearyl alcohol; may contain potentially toxic impurities such as 1,4-dioxane.  Ceteareth-20 is considered a moderate to severe health hazard by cosmetics researchers and is restricted for use in cosmetics.

h. **Cetearyl Alcohol** is a mixture of cetyl and stearyl alcohols. Cetyl alcohol is classified as synthetic by federal regulations. It is chemically synthesized by, for example: catalytic hydrogenation of the triglycerides obtained from coconut oil or tallow, oxidation of a chain growth product of ethylene oligomerized on a triethylaluminum catalyst, reaction of palmitoyl chloride and sodium borohydride, reaction of methylthiopalmitate plus Raney nickel.  Stearyl alcohol is also produced synthetically.

---

[4] http://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_099.pdf

i.   **Cetyl Alcohol** is classified as synthetic by federal regulations. It is chemically

synthesized by, for example: catalytic hydrogenation of the triglycerides obtained from

coconut oil or tallow, oxidation of a chain growth product of ethylene oligomerized on a

triethylaluminum catalyst, reaction of palmitoyl chloride and sodium borohydride,

reaction of methylthiopalmitate plus Raney nickel.

j.   **Citric Acid** is a synthetic substance (2-hydroxy-propane-1, 2,3-tricarboxylic acid).

While the chemical's name has the word "citric" in it, citric acid is no longer extracted

from the citrus fruit but industrially manufactured by fermenting certain genetically

mutain strans of black mold fungus, *Aspergillus* niger.  This is synthetically produced by

feeding simple carbohydrates to Aspergillus niger mold and then processing the

resulting fermented compound.  Calcium hydroxide and sulfuric acid are often used in

processing citric acid.  A technical evaluation report for the substance citric acid

complied by the United States Department of Agriculture, Agricultural Marketing

Service ("USDA AMS") for the National Organic Program classified citric acid as

"Synthetic Allowed".  See page 4, available at

http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5067876.  As one

of the USDA AMS reviewers commented:

> [Citric acid] is a natural[ly] occurring substance that
> commercially goes through numerous chemical processes to get
> to [its] final usable form. This processing would suggest that it
> be classified as synthetic. *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

> traditionally by extraction from citrus juice, no longer
> commercially available. It is now extracted by fermentation of a
> carbohydrate substrate (often molasses) by citric acid bacteria,
> *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast).
> Citric acid is recovered from the fermentation broth by a lime

---

**COMPLAINT AND JURY TRIAL DEMAND**

and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid. *Id.* at 4.

k. **C12-C15 Alkyl Benzoate** is a synthetic ingredient used as an emollient and texture enhancing ingredient.  It is composed of benzoic acid and long-chain (C12-15) alcohols.

l. **Cocamide MEA** is made by mixing fatty acids from coconut oil and monoethanolamine (MEA), this ingredient may contain traces of cocamide diethanolamine (DEA), which, according to the FDA, may lead to the formation of carcinogenic nitrosamines.  The Cosmetic Ingredient Review (CIR) Expert Panel has acknowledged that MEA can react with an aldehyde to form DEA, which then can be nitrosated.

m. **Cocamidopropyl Betaine** is a synthetic surfactant produced by reacting coconut oil fatty acids with 3,3-dimethylaminopropylamine, yielding cocamidopropyl dimethylamine.  It is then reacted with sodium monochloroacetate to produce cocamidopropyl betaine.  Trade associations prohibit cocamidopropyl betaine from being included in products labeled as "natural."

n. **Cocamidopropyl Hydroxysultaine** is a synthetic ingredient, prohibited by the trade associations from household products and personal care products labeled as "natural."

o. **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose.[5]  Alcohols and glucose are synthetic substances according to federal regulations.  7. C.F.R. 205.603(a)(1) and (a)(11).  Or can be produced by reacting glucose and n-butanol in the presence of a strong acid catalyst such as p-toluenesulfonic acid or sulfuric acid, followed by the transglycosidation of the resulting butyl glucoside

with fatty alcohol to yield decyl glucoside. Alternatively, it can be produced by reacting

highly refined glucose with fatty acids in the presence of an acid catalyst.

p. **Dimethicone** is what chemists call a "silicon-based polymer" – "polymer" meaning it is

a large molecule made up of several smaller units bonded together.  Simply put,

dimethicone is a silicon oil that is man-made in the laboratory.

q. **Disodium Ethanoldiglycinate** is a chelating agent, which is a chemical compound that

reacts with metal ions to form a stable, water-soluble complex.

r. **Disodium Laureth Sulfosuccinate** is a chemical that is a disodium salt of an

ethoxylated lauryl alcohol bound to sulfosuccinic acid.

s. **Ethanol**, also called alcohol, is a chemical compound.  Alcohol is a synthetic substance

according to federal regulations.  *See* 7. C.F.R. 205.603(a)(1).

t. **Fragrance.**  Many of the compounds in Fragrance are carcinogenic or otherwise toxic.

Fragrance on a label can indicate the presence of 4,000 separate ingredients.  Most or all

of them are synthetic.  Clinical observation by medical doctors have shown that

exposure to fragrances can affect the central nervous system.

u. **Glycerin** is an emollient that, according to federal regulations, is a synthetic substance.

*See* 7. C.F.R. 205.603(a)(12).  The glycerin used in Defendant's products is not

"natural" but instead, upon information and belief, is manufactured through

saponification, whereby fact molecules in vegetable oil are chemically altered using

sodium hydroxide, a highly toxic chemical.

---

[5] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

A factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create Glycerin. Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to achieve an end product.[6]

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge |

---

[6]https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | of oil or fat. |
|---|---|
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top |

|  | of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |
|---|---|

v. **Glyceryl Stearate** is chemically synthesized by glycerolysis or by esterification of glycerol and stearic acid.  There is no chemical difference between glycerol and glycerin.  Both are names for the same chemical.  Glycerin is a synthetic substance according to federal regulations.  *See* 7 § C.F.R. 205.605(b).

w. **Green #5** is a synthetic dye produced from petroleum or coal tar sources.

x. **Hydrogenated Polyisobutene** is a synthetic polymer used as a skin conditioning agent.

y. **Lauramine Oxide** is a tertiary amine oxide.  Amine oxides are chemical compounds.

z. **Laureth-7** is a polyethylene glycol-based surfactant and synthetic that may contain potential toxic impurities such as 1, 4-dioxane.[7]  Laureth-7 is synonymous with Ethoxylated Alcohol.  *See* 40 C.F.R. § 721.643.

aa. **Laureth-23** is a synthetic substance.  It is a nonionic surfactant prepared from lauryl alcohol and 23 moles of ethylene oxide. Laureth-23 contains an average of 23 repeating ethylene oxide units.  Small amounts of 1,4-dioxane, a by-product of ethoxylation, may be found in Laureth-23.

bb. **Lauryl Glucoside** is a surfactant derived from genetically modified corn. It is produced by alcoholysis of glucose and lauryl alcohol under acidic conditions.  Glucose and alcohol are synthetic substances according to federal regulations.  *See* 7 § C.F.R.

---

[7] http://www.ewg.org/skindeep/ingredient/703425/LAURETH-7/#.WgzNz0xFyUk

205.603(a)(1) and (a)(11).  Historically, lauryl alcohol was prepared solely from natural products, but is now synthesized from ethylene. [8]

cc. **Methylisothiazolinone** is a synthetic cosmetic preservative.  It is a powerful biocide that has been linked to brain and nerve cell damage.  This synthetic biocide preservative is produced by the controlled chlorination of dimethyl-dithiodipropionamide in solvent and then neutralized.

dd. **PEG-7 Glyceryl Cocoate.**  This synthetic polymer is based on PEG (polyethylene glycol) and fatty acids derived from coconut oil.  Due to the presence of PEG, this ingredient may contain potentially toxic manufacturing impurities such as 1,4-dioxane.

ee. **PEG-40 Hydrogenated Castor Oil** is a polyethylene glycol derivative of castor oil; may be contaminated with potentially toxic impurities such as 1,4-dioxane.

ff. **PEG-200 Hydrogenated Glyceryl Palmate** is a chemical substance that is a polyethylene glycol derivative of hydrogenated palm glyceride.  It has an average of 200 moles of ethylene oxide.

gg. **Phenoxyethanol.**  The Food and Drug Administration ("FDA") has warned that phenoxyethanol is dangerous.  Phenoxyethanol is a synthetic substance and adjuvant.  *See* 21 C.F.R. § 172.515.[9]  It is produced by reacting phenol with ethylene oxide (a known carcinogen) in the presence of a basic catalyst under pressure and heat.  It is

---

[8] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

[9] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients promoted as natural.  https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care.

classified as synthetic by trade associations governing the use of the term "natural" on household and personal care products.

hh. **Polyacrylamide** is a synthetic polymer of acrylamide.

ii. **Polyisobutene** is a synthetic polymer of isobutylene; used as a film-forming agent.

jj. **Polysorbate 20** is classified as synthetic by federal regulations and prohibited by trade groups from being in products labeled as "natural."  It is a surfactant produced by reacting sorbitol and its anhydrides with ethylene oxide.

kk. **Potassium Sorbate** is produced by reacting sorbic acid and potassium hydroxide.  It is classified as a chemical preservative under federal regulations

ll. **Preservatives** are synthetic substances.

mm. **Red #33** is a synthetic dye produced from petroleum or coal tar sources.

nn. **Sodium Benzoate** is not found to occur naturally according to federal regulations. Instead, it is chemically synthesized by reacting benzoic acid with sodium hydroxide, sodium bicarbonate, or sodium carbonate.

oo. **Sodium Benzotriazoyl Butylphenol Sulfonate** is a synthetic ingredient.  This UV light stabilization ingredient is part of a larger formulation and protects colors and other light-sensitive ingredients from photolytic and/or photo-oxidative degradation and thus improve the stability of formulations which are exposed to UV-A and UV-B light. Sodium Benzotriazolyl Butylphenol Sulfonate is suspected of causing skin or sense organ toxicity.

pp. **Sodium Carbonate** is a toxic household chemical substance.

qq. **Sodium Chloride.**  A synthetic and hazardous chemical substance.[10]

rr. **Sodium Citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid. It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. § 205.605(b).  It is usually prepared by reacting sodium carbonate or sodium hydroxide with citric acid, or by reacting sodium sulfate with calcium citrate.

ss. **Sodium Coco-Sulfate** is synthetic, produced by isolating C12-18 saturated fatty acids from oils, and then sulfonating with chemicals such as sulfuric acid, sulfur trioxide, or chlorosulfonic acid.

tt. **Sodium Laureth Sulfate** is a chemical derived from ethoxylated lauryl alcohol and used as a surfactant; may be contaminated with potentially toxic manufacturing impurities such as 1,4-dioxane.

uu. **Sodium Lauryl Sulfate** is a chemical and food additive as stated in C.F.R. § 172.822.  It is an active ingredient prepared by sulfation of lauryl alcohol, followed by neutralization with sodium carbonate.[11]

vv. **Sodium Lauroyl Sarcosinate** is a synthetic skin conditioning agent.

ww. **Sodium Xylene Sulfonate** is a chemical used as a hydrotrope, an organic compound that increases the ability of water to dissolve other molecules.

xx. **Tetrasodium EDTA** is produced synthetically for industrial purposes in the laboratory. It is a preservative made from the known carcinogen formaldehyde and sodium cyanide.

---

[10] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf

[11] https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_G-52_1-Sep-93.pdf

It is also a penetration enhancer, meaning it breaks down the skin's protective barrier, going directly into the bloodstream.

yy. **Tetrasodium Glutamate Diacetate** is a multi-purpose, clear, liquid chelating agent and preservative booster.  As previously explained, a chelating agent is a chemical compound that reacts with metal ions to form a stable, water-soluble complex.

zz.  **Tributyl Citrate** is a chemical substance that is a triester of butyl alcohol and citric acid.

aaa.  **Trideceth-9** is a chemical substance that is a polyethylene glycol ether of Tridecyl Alcohol.

bbb. **Trisodium Ethylenediamine Disuccinate** is a chelating agent which is a chemical compound that reacts with metal ions to form a stable, water-soluble complex.

ccc.  **Yellow #5**, also known as tartrazine or E102, is a synthetic dye produced from petroleum.  It is banned in Austria and Norway, and other European countries have issued warnings about their possible side effects.

ddd.        **Yellow #6** is a synthetic dye produced from petroleum.

37.    No product labeled "natural" or "Active Ingredients Derived from Natural Sources" should contain any of these ingredients.  And yet, the Williams Sonoma Products contain the following, non-exhaustive, list of unnatural and/or synthetic ingredients:

| **Product** | **Synthetic Ingredient** |
|---|---|
|  |  |

| Williams Sonoma Fleur de Sel Hand Soap | Buteth-3<br>Citric Acid*<br>Decyl Glucoside<br>Glycerin<br>Cocoamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance (Parfum)<br>Green #5<br>PEG-200 Hydrogenated Glyceryl Palmate<br>PEG-7 Glyceryl Cocoate<br>Potassium Sorbate*<br>Polysorbate 20<br>Red #33<br>Sodium Benzoate<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Coco-Sulfate<br>Sodium Chloride*<br>Trisodium Ethylenediamine Disuccinate<br>Tributyl Citrate<br>Yellow #5 |
| --- | --- |
| Williams Sonoma Fleur de Sel Dish Soap | Benzisothiazolinone<br>Buteth-3<br>Citric Acid*<br>Cocoamidopropyl Betaine<br>Fragrance (Parfum)<br>Glycerin<br>Green #5<br>Lauryl Glucoside<br>Lauramine Oxide<br>Methisothiazolinone<br>Red #33<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Coco Sulfate<br>Tetrasodium EDTA<br>Tributyl Citrate<br>Yellow #5 |
| Williams Sonoma Fleur de Sel All-Purpose | Benzisothiazolinone |

---

* Denotes Active Ingredient.  Again, Plaintiff allege that the Products' "natural" claims apply to all of the Products' ingredients and not just to the Products' "active" ingredients.  A reasonable consumer would likely be deceived by these "natural" claims to believe that all of the ingredients in the Products are "derived from natural sources."  The ingredient lists on the Products' labels and Defendant's website do not differentiate between "active" and "inactive" ingredients.

| Cleaner | Buteth-3<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Green #5<br>Methylisothiazolinone<br>Polysorbate 20<br>Red #33<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Citrate<br>Tributyl Citrate<br>Yellow #5 |
| --- | --- |
| Williams Sonoma Fleur de Sel Countertop Spray | Benzisothiazolinone<br>Citric Acid*<br>Fragrance (Parfum)<br>Glycerin<br>Green #5<br>Laureth-23<br>Methylisothiazolinone<br>Red #33<br>Sodium Carbonate<br>Yellow #5 |
| Williams Sonoma Fleur de Sel Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Ceteareth-20<br>Cetearyl Alcohol<br>Dimethicone*<br>Fragrance (Parfum)<br>Glycerin<br>Glyceryl Strearate<br>Hydrogenated Polyisobutene |
| Williams Sonoma Fleur de Sel Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma French Lavender Hand Soap | Buteth-3<br>Citric Acid*<br>Cocamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance |

| | |
|---|---|
| | Glycerin<br>Green #5<br>Peg-200 Hydrogenated Glyceryl Palmate<br>Peg-7 Glyceryl Cocoate<br>Potassium Sorbate*<br>Red #33<br>Sodium Benzoate<br>Sodium Benzotriazoly Butylphenol Sulfonate<br>Sodium Chloride*<br>Sodium Laureth Sulfate<br>Tetrasodium Edta<br>Tributyl Citrate |
| Williams Sonoma French Lavender Dish Soap | Ammonium Lauryl Sulfate<br>Benzisothiazolinone<br>Buteth-3<br>Cocamide MEA<br>Cocamidopropyl Betaine<br>Fragrance<br>Glycerin<br>Green 5<br>Methylisothiazolinone<br>Red 33<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Xylene Sulfonate<br>Tetrasodium EDTA<br>Tributyl Citrate |
| Williams Sonoma French Lavender All-Purpose Cleaner | Benzisothiazolinone<br>Buteth-3<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Green 5<br>Methylisothiazolinone<br>Polysorbate 20<br>Red 33<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Citrate<br>Tributyl Citrate |
| Williams Sonoma French Lavender Countertop Spray | Benzisothiazolinone<br>Buteth-3 |

| | |
|---|---|
| | Citric Acid* |
| | Decyl Glucoside |
| | Disodium Ethanoldiglycinate |
| | Fragrance |
| | Glycerin |
| | Green 5 |
| | Methylisothiazolinone |
| | Polysorbate 20 |
| | Red 33 |
| | Sodium Benzotriazolyl Butylphenol Sulfonate |
| | Sodium Citrate |
| | Tributyl Citrate |
| Williams Sonoma French Lavender Hand Lotion | Ammonium Acrylate/Acrylamide Copolymer |
| | C12-C15 Alkyl Benzoate |
| | Caprylic/Capric Triglyceride |
| | Ceteareth-20 |
| | Cetearyl Alcohol |
| | Cetyl Alcohol |
| | Dimethicone* |
| | Fragrance |
| | Glycerin |
| | Glyceryl Stearate |
| | Green #5 |
| | Hydrogenated Polyisobutene |
| | Laureth-7 |
| | Phenoxyethanol |
| | Polyacrylamide |
| | Potassium Sorbate* |
| | Red #33 |
| | Sodium Benzoate |
| Williams Sonoma French Lavender Room Spray | Alcohol Denat. |
| | Fragrance (Parfum) |
| | Peg-40 Hydrogenated Castor Oil |
| | Trideceth-9 |
| Williams Sonoma Frosted Clove Hand Soap | Citric Acid* |
| | Cocamidopropyl Hydroxysultaine |
| | Fragrance (Parfum) |
| | Glycerin |
| | Potassium Sorbate* |
| | Sodium Benzoate |
| | Sodium Chloride* |
| | Tetrasodium Glutamate Diacetate |

| | |
|---|---|
| Williams Sonoma Frosted Clove Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance (Parfum)<br>Glyceryl Stearate<br>Hydrogenated Polyisobutene<br>Phenoxyethanol<br>Polysorbate 20<br>Potassium Sorbate*<br>Sodium Benzoate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Frosted Clove Dish Soap | Benzisothiazolinone<br>Citric Acid*<br>Fragrance (Parfum)<br>Glycerin<br>Lauramine Oxide<br>Lauryl Glucoside<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Chloride*<br>Sodium Lauryl Sulfate*<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Frosted Clove Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma Lemongrass Ginger Hand Soap | Citric Acid*<br>Fragrance<br>Glycerin<br>Green #5<br>Potassium Sorbate*<br>Red #33<br>Sodium Benzoate<br>Sodium Chloride*<br>Sodium Coco Sulfate,<br>Coco/Sunfloweramidopropyl Betaine<br>Sodium Cocoamphodiacetate Cocoyl Proline<br>Trisodium Ethylenediamine Disuccinate<br>Yellow #5 |
| Williams Sonoma Lemongrass Ginger Dish | Benzisothiazolinone |

| | |
|---|---|
| Soap | Citric Acid*<br>Cocamidopropyl Betaine<br>Fragrance<br>Green #5<br>Lauramine Oxide<br>Lauryl Glucoside<br>Methylisothiazolinone<br>Red #33<br>Sodium Coco Sulfate<br>Sodium Lauroyl Sarcosinate<br>Tetrasodium EDTA<br>Yellow #5 |
| Williams Sonoma Lemongrass Ginger All-Purpose Cleaner | Benzisothiazolinone<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Green #5<br>Methylisothiazolinone<br>Polysorbate 20<br>Red #33<br>Sodium Citrate<br>Yellow #5 |
| Williams Sonoma Lemongrass Ginger Countertop Spray | Benzothiazolinone<br>Citric Acid*<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Glycerin<br>Green #5<br>Methylisothiazolinone<br>Red #33<br>Sodium Citrate, Fragrance<br>Yellow #5 |
| Williams Sonoma Lemongrass Ginger Hand Lotion | Ammonium Acrylate/Acrylamide Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Ceteareth-20<br>Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance<br>Glycerin<br>Glyceryl Stearate |

| | |
|---|---|
| | Green #5<br>Hydrogenated Polyisobutene<br>Laureth-7<br>Phenoxyethanol<br>Polyacrylamide<br>Potassium Sorbate*<br>Sodium Benzoate<br>Yellow #5 |
| Williams Sonoma Lemongrass Ginger Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma Meyer Lemon Hand Soap | Buteth-3<br>Citric Acid*<br>Cocamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance<br>Glycerin<br>PEG-200 Hydrogenated Glyceryl Palmate<br>PEG-7 Glyceryl Cocoate<br>Potassium Sorbate*<br>Sodium Benzoate<br>Sodium Benzotriazoyl Butylphenol Sulfonate<br>Sodium Chloride*<br>Sodium Laureth Sulfate<br>Tetrasodium EDTA<br>Tributyl Citrate<br>Yellow #5<br>Yellow #6 |
| Williams Sonoma Meyer Lemon Dish Soap | Ammonium Lauryl Sulfate<br>Benzisothiazolinone<br>Cocamide MEA<br>Cocamidopropyl Betaine<br>Fragrance, Cocamidopropyl Betaine<br>Glycerin<br>Methylisothiazolinone<br>Sodium Xylene Sulfonate<br>Tetrasodium Edta<br>Yellow #5<br>Yellow #6 |
| Williams Sonoma Meyer Lemon All-Purpose Cleaner | Benzisothiazolinone<br>Buteth-3<br>Decyl Glucoside |

| | |
|---|---|
| | Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Benzotriazolyl Butylphenol<br>Sulfonate<br>Sodium Citrate<br>Tributyl Citrate<br>Yellow #5<br>Yellow #6 |
| Williams Sonoma Meyer Lemon Countertop Spray | Benzisothiazolinone<br>Buteth-3<br>Citric Acid*<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Benzotriazolyl Butylphenol<br>Sulfonate<br>Sodium Citrate<br>Tributyl Citrate<br>Yellow #5<br>Yellow #6 |
| Williams Sonoma Meyer Lemon Hand Lotion | Caprylic/Capric Triglyceride<br>C12-C15 Alkyl Benzoate<br>Hydrogenated Polyisobutene<br>Glyceryl Stearate<br>Cetearyl Alcohol<br>Glycerin<br>Ceteareth-20<br>Dimethicone*<br>Fragrance<br>Polyacrylamide<br>Ammonium Acrylate/Acrylamide Copolymer<br>Cetyl Alcohol<br>Laureth-7<br>Sodium Benzoate<br>Potassium Sorbate*<br>Phenoxyethanol<br>Yellow #5 |

| | |
|---|---|
| | Yellow #6 |
| Williams Sonoma Meyer Lemon Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma Pink Grapefruit Hand Soap | Buteth-3<br>Citric Acid*<br>Cocamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance<br>Glycerin<br>Glyceryl Cocoate<br>PEG-200 Hydrogenated Glyceryl Palmate<br>PEG-7<br>Potassium Sorbate*<br>Red #33<br>Sodium Benzoate<br>Sodium Benzotriazoly Butylphenol Sulfonate<br>Sodium Chloride*<br>Sodium Laureth Sulfate<br>Tetrasodium EDTA<br>Tributyl Citrate<br>Yellow #5 |
| Williams Sonoma Pink Grapefruit Dish Soap | Ammonium Lauryl Sulfate<br>Benzisothiazolinone<br>Buteth-3<br>Cocamidopropyl Betaine Cocamide MEA<br>Fragrance<br>Glycerin<br>Methylisothiazolinone<br>Red #33<br>Sodium Benzotriazolyl Butylphenol Sulfonate<br>Sodium Xylene Sulfonate<br>Tetrasodium Edta<br>Tributyl Citrate |
| Williams Sonoma Pink Grapefruit All-Purpose Cleaner | Benzisothiazolinone<br>Buteth-3<br>Decyl Glucoside<br>Disodium Ethanoldiglycinate<br>Fragrance<br>Glycerin<br>Methylisothiazolinone |

| | |
|---|---|
| | Polysorbate 20 |
| | Red #33 |
| | Sodium Benzotriazolyl Butylphenol Sulfonate |
| | Sodium Citrate |
| | Tributyl Citrate |
| | Yellow #5 |
| Williams Sonoma Pink Grapefruit Countertop Spray | Benzisothiazolinone |
| | Buteth-3 |
| | Citric Acid* |
| | Decyl Glucoside |
| | Disodium Ethanoldiglycinate |
| | Fragrance |
| | Glycerin, Tributyl Citrate |
| | Methylisothiazolinone |
| | Red #33 |
| | Sodium Benzotriazolyl Butylphenol Sulfonate |
| | Sodium Citrate |
| | Yellow #5 |
| Williams Sonoma Pink Grapefruit Hand Lotion | Ammonium Acrylate/Acrylamide Copolymer |
| | C12-C15 Alkyl Benzoate |
| | Caprylic/Capric Triglyceride |
| | Ceteareth-20 |
| | Cetearyl Alcohol |
| | Cetyl Alcohol |
| | Dimethicone* |
| | Fragrance |
| | Glycerin |
| | Glyceryl Stearate |
| | Hydrogenated Polyisobutene |
| | Laureth-7 |
| | Phenoxyethanol |
| | Polyacrylamide |
| | Potassium Sorbate* |
| | Red #33 |
| | Sodium Benzoate |
| | Yellow #5 |
| Williams Sonoma Pink Grapefruit Room Spray | Alcohol Denat. |
| | Fragrance (Parfum) |
| | Peg-40 Hydrogenated Castor Oil |
| | Trideceth-9 |
| Williams Sonoma Pumpkin Spice Hand Soap | Citric Acid* |

| | |
|---|---|
| | Cocamidopropyl Hydroxysultaine<br>Fragrance<br>Glycerin<br>Potassium Sorbate*<br>Sodium Benzoate<br>Sodium Chloride*<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Pumpkin Spice Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Ceteareth-20<br>Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance<br>Glycerin<br>Glyceryl Stearate<br>Hydrogenated Polyisobutene<br>Phenoxyethanol<br>Polysorbate 20<br>Potassium Sorbate*<br>Sodium Benzoate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Pumpkin Spice Dish Soap | Benzisothiazolinone<br>Citric Acid*<br>Fragrance<br>Glycerin<br>Lauramine Oxide<br>Lauryl Glucoside<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Chloride*<br>Sodium Lauryl Sulfate*<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Spiced Chestnut Hand Soap | Buteth-3<br>Citric Acid*<br>Cocamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance<br>Glycerin<br>Peg-200 Hydrogenated Glyceryl Palmate<br>Peg-7 Glyceryl Cocoate<br>Potassium Sorbate*<br>Sodium Benzoate |

| | |
|---|---|
| | Sodium Benzotriazoyl Butylphenol Sulfonate<br>Sodium Chloride*<br>Sodium Laureth Sulfate<br>Tetrasodium Edta<br>Tributyl Citrate |
| Williams Sonoma Spiced Chestnut Hand Lotion | Ammonium Acrylate/Acrylamide Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Ceteareth-20<br>Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance<br>Glycerin<br>Glyceryl Stearate<br>Hydrogenated Polyisobutene<br>Laureth-7<br>Phenoxyethanol<br>Polyacrylamide<br>Potassium Sorbate*<br>Sodium Benzoate |
| Williams Sonoma Spiced Chestnut Dish Soap | Ethanol<br>Fragrance<br>Preservative (Non-Paraben 0.20%). |
| Williams Sonoma Spiced Chestnut Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma Sunny Orange Citrus Hand Soap | Citric Acid*<br>Cocamidopropyl Hydroxysultaine<br>Glycerin<br>Fragrance (Parfum)<br>Potassium Sorbate*<br>Sodium Benzoate<br>Sodium Chloride*<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Sunny Orange Citrus Dish Soap | Benzisothiazolinone<br>Citric Acid*<br>Fragrance (Parfum)<br>Glycerin<br>Lauramine Oxide<br>Lauryl Glucoside<br>Methylisothiazolinone |

**COMPLAINT AND JURY TRIAL DEMAND**

| | Polysorbate 20 |
| | Sodium Chloride* |
| | Sodium Lauryl Sulfate* |
| | Tetrasodium Glutamate Diacetate |
| Williams Sonoma Sunny Orange Citrus Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer |
| | C12-C15 Alkyl Benzoate |
| | Caprylic/Capric Triglyceride |
| | Ceteareth-20 |
| | Cetearyl Alcohol |
| | Cetyl Alcohol |
| | Dimethicone* |
| | Fragrance (Parfum) |
| | Glycerin |
| | Glyceryl Stearate |
| | Phenoxyethanol |
| | Polysorbate 20 |
| | Potassium Sorbate* |
| | Sodium Benzoate |
| | Tetrasodium Glutamate Diacetate |
| Williams Sonoma Sunny Orange Citrus Room Spray | Alcohol Denat. |
| | Benzisothiazolinone |
| | Citric Acid* |
| | Fragrance (Parfum) |
| | Methylisothiazolinone |
| | Peg-40 Hydrogenated Castor Oil |
| | Sodium Citrate |
| | Trideceth-9 |
| Williams Sonoma White Gardenia Hand Soap | Citric Acid* |
| | Cocamidopropyl Hydroxysultaine |
| | Potassium Sorbate* |
| | Sodium Benzoate |
| | Sodium Chloride* |
| | Tetrasodium Glutamate Diacetate |
| Williams Sonoma White Gardenia Dish Soap | Benzisothiazolinone |
| | Citric Acid* |
| | Fragrance (Parfum) |
| | Glycerin |
| | Lauramine Oxide |
| | Lauryl Glucoside |
| | Methylisothiazolinone |
| | Polysorbate 20 |
| | Sodium Chloride* |
| | Sodium Lauryl Sulfate* |

| | Tetrasodium Glutamate Diacetate |
|---|---|
| Williams Sonoma White Gardenia All-Purpose Cleaner | Benzisothiazolinone<br>Decyl Glucoside<br>Fragrance<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Citrate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma White Gardenia Countertop Spray | Benzisothiazolinone<br>Citric Acid*<br>Decyl Glucoside<br>Fragrance<br>Methylisothiazolinone<br>Sodium Citrate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma White Gardenia Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer<br>C12-C15 Alkyl Benzoate<br>Caprylic/Capric Triglyceride<br>Ceteareth-20<br>Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance (Parfum)<br>Glycerin<br>Glyceryl Stearate<br>Phenoxyethanol<br>Polysorbate 20<br>Potassium Sorbate*<br>Sodium Benzoate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma White Gardenia Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |
| Williams Sonoma Winter Forest Hand Soap | Citric Acid*<br>Cocamidopropyl Betaine<br>Disodium Laureth Sulfosuccinate<br>Fragrance<br>Glycerin<br>Peg-200 Hydrogenated Glyceryl Palmate<br>Peg-7 Glyceryl Cocoate<br>Potassium Sorbate*<br>Sodium Benzoate |

| | Sodium Chloride* |
| | Sodium Laureth Sulfate |
| | Tetrasodium EDTA |
| Williams Sonoma Winter Forest Hand Lotion | Ammonium Acrylate/Acrylamide Copolymer |
| | C12-C15 Alkyl Benzoate |
| | Caprylic/Capric Triglyceride |
| | Ceteareth-20 |
| | Cetearyl Alcohol |
| | Cetyl Alcohol |
| | Dimethicone* |
| | Fragrance |
| | Glycerin |
| | Glyceryl Stearate |
| | Hydrogenated Polyisobutene |
| | Laureth-7 |
| | Phenoxyethanol |
| | Polyacrylamide |
| | Potassium Sorbate* |
| | Sodium Benzoate |
| Williams Sonoma Winter Forest Dish Soap | Benzisothiazolinone |
| | Citric Acid* |
| | Decyl Glucoside |
| | Disodium Ethanoldiglycinate |
| | Fragrance/Parfum |
| | Glycerin |
| | Methylisothiazolinone |
| | Sodium Citrate |
| Williams Sonoma Winter Forest Room Spray | Alcohol Denat. |
| | Fragrance (Parfum) |
| | Peg-40 Hydrogenated Castor Oil |
| | Trideceth-9 |
| Williams Sonoma Winter Berry Hand Soap | Citric Acid* |
| | Cocamidopropyl Hydroxysultaine |
| | Fragrance (Parfum) |
| | Glycerin |
| | Potassium Sorbate* |
| | Sodium Benzoate |
| | Sodium Chloride* |
| | Tetrasodium Glutamate Diacetate |
| Williams Sonoma Winter Berry Hand Lotion | Acrylamide/Ammonium Acrylate Copolymer |
| | C12-C15 Alkyl Benzoate |
| | Caprylic/Capric Triglyceride |
| | Ceteareth-20 |

| | |
|---|---|
| | Cetearyl Alcohol<br>Cetyl Alcohol<br>Dimethicone*<br>Fragrance (Parfum)<br>Glycerin<br>Glyceryl Stearate<br>Phenoxyethanol<br>Polysorbate 20<br>Potassium Sorbate*<br>Sodium Benzoate<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Winter Berry Dish Soap | Benzisothiazolinone<br>Citric Acid*<br>Fragrance (Parfum)<br>Glycerin<br>Lauramine Oxide<br>Lauryl Glucoside<br>Methylisothiazolinone<br>Polysorbate 20<br>Sodium Chloride*<br>Sodium Lauryl Sulfate*<br>Tetrasodium Glutamate Diacetate |
| Williams Sonoma Winter Berry Room Spray | Alcohol Denat.<br>Fragrance (Parfum)<br>Peg-40 Hydrogenated Castor Oil<br>Trideceth-9 |

38.     Given the significant presence of these unnatural and/or synthetic ingredients in the Products, Defendants' representations that they are "natural" and contain "Active Ingredients Derived from Natural Sources" are deceptive and misleading.

39.     The term "synthetic" is also defined by federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).

40.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the terms "Active Ingredients Derived from Natural Sources" are misleading to a reasonable consumer because the reasonable consumer believes that the terms "Active Ingredients Derived from Natural Sources" when used to describe a good such as the Products, means that it is free of synthetic ingredients.

41.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

42.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though all of the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

43.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources"

44.     Defendants did not disclose that any of the ingredients listed above are unnatural and/or synthetic ingredients.  A reasonable consumer understands Defendant's "Active Ingredients Derived from Natural Sources" claim to mean that the Products are "Derived from Natural Sources," and do not contain unnatural and/or synthetic ingredients.

45.     Defendant's representations that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products.  Plaintiff and Class Members relied on Defendants' false and misleading misrepresentations in purchasing the Products at some premium price above comparable alternatives that are not represented to be "natural" and contain "Active Ingredients Derived from Natural Sources."  If not for Defendant's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

46.     Defendant knew that consumers will pay more for a product labeled "natural" and "derived from natural sources," and intended to deceive Plaintiff and putative class members by labeling the William Sonoma Products as purportedly natural products.

47.     Defendant has profited enormously from their false and misleading representations that Williams Sonoma Products are "natural" and contain "Active Ingredients Derived from Natural Sources."  The purpose of this action is to require Williams Sonoma to undertake a corrective advertising campaign and to provide consumers with monetary relief for Williams Sonoma deceptive and misleading product claims.

## CLASS REPRESENTATION ALLEGATIONS

48.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are Defendants, its affiliates, employees, officers and directors, persons or entities that purchases the Products for resale, and the Judge(s) assigned to this case.

49.     Plaintiff also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass").  Excluded from the California Subclass are Defendants, its affiliates, employees, officers and directors, persons or entities that purchases the Products for resale, and the Judge(s) assigned to this case.

50.     At this time, Plaintiff does not know the exact number of members of the aforementioned classes; however, given the nature of the claims and the number of Williams Sonoma retail stores in the United States that sell the Products as well as sales through direct to consumer channels such as catalogs and e-commerce, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.

51.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

(a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)     whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the classes;

(d)     whether Defendant violated the Magnuson-Moss Warranty Act;

(e)      whether Defendant breached express and implied warranties to Plaintiff and the classes;

(f)      whether Plaintiff and the classes have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

52.      With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the California Consumer Legal Remedies Act, as well as California's False Advertising Law and Unfair Competition Law.

53.      Plaintiff's claims are typical of those of other class members because Plaintiff, like all members of the classes, purchased, in a typical consumer setting, Defendant's Products bearing the natural representations and other representations, and Plaintiff sustained damages from Defendant's wrongful conduct.

54.      Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

55.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

56.      The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

57.      The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interest of the classes even where certain Class or Subclass members are not parties to such actions.

## COUNT I

### (Violation of California's Consumer Legal Remedies Act)

58.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

59.     Plaintiff Kutza brings this cause of action on behalf of himself and members of the California Subclass against Defendant.

60.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

61.     Plaintiff Kutza and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Williams Sonoma Products for personal, family, or household purposes.

62.     Plaintiff Kutza, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

63.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

64.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Kutza and the other members of the California Subclass that the

Products are "natural" and contain "Active Ingredients Derived from Natural Sources," when in fact they are made with unnatural and/or synthetic ingredients.

65.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

66.     CLRA § 1782 NOTICE.  On February 15, 2018, CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Defendant received the letter on February 20, 2018.  Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Kutza, on behalf of himself and all other members of the California Subclass, seek injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II

### (Violation of California's False Advertising Law)

67.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

68.     Plaintiff Kutza brings this cause of action on behalf of himself and members of the California Subclass.

69.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or

disseminated before the public in this state, … in an advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70.     Defendant committed acts of false advertising, as defined by §§ 17500, *et seq.*, by falsely claiming that the Products are "natural" and "derived from natural sources" when they are not.

71.     Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

72.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiff Kutza and the California Subclass have suffered injury in fact and have lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased the Products on the same terms if they knew that the products were made with unnatural and synthetic ingredients; (b) they paid a substantial price premium compared to other skin care, hygiene and household products due to Defendant's misrepresentations; and (c) the products do not have the characteristics, uses, or benefits as promised.


**COUNT III**

**(Violation of California's Unfair Competition Law)**

73.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

74.     Plaintiff Kutza brings this cause of action on behalf of himself and members of the proposed California Subclass.

75.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

76.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of:

(a)     its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

(b)     its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.* as alleged above.

77.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

78.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.  Indeed, Plaintiff Kutza and the other members of the California Subclass were unquestionably deceived regarding the nature of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresents and/or omits the true facts concerning the characteristics of the Products.  Said acts are fraudulent business practices.

79.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

80.     Plaintiff Kutza and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying a premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Williams Sonoma Products.

81.     There is no benefit to consumers or competition from deceptively marketing and labeling the Products, which purport to be "natural" and contain "Active Ingredients Derived from Natural Sources," when these unqualified claims are false.

82.     Plaintiff Kutza and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

83.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Kutza and the other members of the California Subclass.

84.     Defendant's violations of the UCL continue to this day.

85.     Pursuant to California Business and Professional Code § 17203, Plaintiff Kutza and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to:

(a)     provide restitution to Plaintiff Kutza and the other California

Subclass members;

(b)    disgorge all revenues obtained as a result of violations of the UCL; and

(c)    pay Plaintiff's and the California Subclass attorneys' fees and costs.

## COUNT IV

**(Violation of The Magnuson-Moss Warranty Act,**

**15 U.S.C. §§ 2301, et seq.)**

86.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

87.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

88.    The Williams Sonoma Products are consumer products as defined in 15 U.S.C. § 2301(1).

89.    Plaintiff and the Class and California Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

90.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

91.    In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources."

92.    The Products do not conform to the express warranties because each of the express warranties is false and misleading.  The Products contain unnatural and/or synthetic ingredients.

93.    By reason of Defendants' breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and California Subclass members pursuant to the Magnuson-

Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and the Class and California Subclass members.

94.     Plaintiff and the Class and California Subclass members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unnatural and/or synthetic ingredients in the product.

## COUNT V

### (Breach of Express Warranty)

95.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

97.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "natural" and contain "Active Ingredients Derived from Natural Sources."

98.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of act, representations, promises, and descriptions.

99.     The Products do not conform to the express warranty because they contain unnatural and/or synthetic ingredients.

100.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because (a) they would not have

purchased the Products on the same terms if they knew the truth about the Products unnatural and/or synthetic ingredients; (b) they paid a substantial premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT VI

### (Breach of Implied Warranty of Merchantability)

101.   Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

102.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

103.   Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Williams Sonoma Products were "natural" and contain "Active Ingredients Derived from Natural Sources."

104.   Defendants breached the warranty implied in the contract for the sale of the Williams Sonoma Products because the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label."  *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

105.   Plaintiff and Class members purchased the Williams Sonoma Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Williams Sonoma Products.

106.   The Williams Sonoma Products were not altered by Plaintiff or Class members.

107.    The Williams Sonoma Products were defective when they left the exclusive control of Defendant.

108.    Defendant knew that the Williams Sonoma Products would be purchased and used without additional testing by Plaintiff and Class members.

109.    The Williams Sonoma Products were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

110.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Williams Sonoma Products if they knew the truth about the products, namely, that they contain unnatural and/or synthetic ingredients.

## COUNT IX

### (Unjust Enrichment)

111.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

112.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

113.    Plaintiff and Class members conferred benefits on Defendant by purchasing the Williams Sonoma Products.

114.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Williams Sonoma Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Williams Sonoma Products were "natural" and contain "Active Ingredients Derived

from Natural Sources." These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Williams Sonoma Products if the true facts were known.

115.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## <u>COUNT X</u>

### (Negligent Misrepresentation)

116.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

117.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

118.    As discussed above, Defendant misrepresented that the Williams Sonoma Products were "natural" and contain "Active Ingredients Derived from Natural Sources."

119.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

120.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Williams Sonoma Products.

121.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Williams Sonoma Products.

122.    Plaintiff and Class members would not have purchased the Williams Sonoma Products if the true facts had been known.

123.    The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT XI

### (Fraud)

124.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

125.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

126.    As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products, including but not limited to the fact that the Products contain unnatural and/or synthetic ingredients.

127.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and class members to purchase the Products.

128.    The fraudulent actions of Defendant caused damage to Plaintiff and class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and California Subclass representatives; and naming Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

d. For an order awarding compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order requiring Defendant to undertake a corrective advertising campaign;

h. For injunctive relief as pleaded or as the Court may deem proper; and

i. For an order awarding Plaintiff and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

1

## **<u>JURY DEMAND</u>**

2

Plaintiff hereby demands a trial by jury as to all claims in this action.

3

4

Dated:  June 13, 2018                              Respectfully submitted,

5

6                                                              */s/ James A. Morris Jr.*
                                                             James A. Morris, Esq.

7                                                              Shane E. Greenberg, Esq.

8                                                              **MORRIS LAW FIRM**
                                                             4111 W. Alameda Avenue Suite 611

9                                                              Burbank, CA 91505
                                                             Tel:    747-283-1144

10                                                             Fax:    747-283-1143
                                                             Attorneys for Plaintiff BRIAN KUTZA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, James A. Morris, declare as follows:

1.     I am counsel for Plaintiff, and I am the owner of Morris Law Firm.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.     The complaint filed in this action is filed in the proper place for trial because the Defendant is headquartered in this District and the misrepresentation at issue emanated from this District.   Furthermore, Plaintiff Kutza alleges that they made several purchases of Defendant's Williams Sonoma Products from various stores within this State.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on June 13, 2018, at Burbank, California.


*/s/ James A. Morris Jr.*
James A. Morris, Jr.