1 SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
2 BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
ALYSSA M. SHAUER, Cal. Bar No. 318359
3 1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
4 Telephone: 310.228.3700
Facsimile: 310.228.3701
5 Email ccardon@sheppardmullin.com
baigboboh@sheppardmullin.com
6 ashauer@sheppardmullin.com

7 *Attorneys for Defendant*
WILLIAMS-SONOMA, INC.

8

9 **UNITED STATES DISTRICT COURT**

10 **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11

12 BRIAN KUTZA on behalf of himself and all
others similarly situated,

13
Plaintiff,

14
v.

15 WILLIAMS-SONOMA, INC.,

16
Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Case No. 3:18-cv-03534-RS | |
| *Assigned to the Hon. Richard Seeborg* | |
| **CLASS ACTION** | |
| **DEFENDANT WILLIAMS-SONOMA, INC.'S:** | |
| **(1)** | **NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; AND** |
| **(2)** | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Hearing: | |
| Date: | September 20, 2018 |
| Time: | 1:30 p.m. |
| Courtroom: | 3 |
| Complaint Filed: | June 13, 2018 |
| Trial Date: | None Set |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 20, 2018 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 3 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Richard Seeborg presiding, Defendant Williams-Sonoma, Inc. ("WSI") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), for an order dismissing the *Class Action Complaint* (the "*Complaint*") filed by Plaintiff Brian Kutza ("Plaintiff") for lack of standing and failure to state facts sufficient to constitute a cause of action.

WSI's *Motion to Dismiss* (the "*Motion*") seeks dismissal of the class and individual claims asserted in the *Complaint* on the grounds that:  (1) Plaintiff lacks standing to represent a nationwide class pursuing non-California claims and injunctive relief; (2) the *Complaint* does not allege facts sufficient to state claims for violation of California's Consumers Legal Remedies Act ("CLRA"), violation of California's False Advertising Law ("FAL"), violation of California's Unfair Competition Law ("UCL"), violation of the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, negligent misrepresentation, and fraud; and (3) Plaintiff cannot pursue the equitable claims he asserts, or the equitable relief and the CLRA damages he seeks, in the *Complaint*.

The *Motion* is based on this *Notice of Motion* and *Motion*, the attached *Memorandum of Points and Authorities*, the *Declaration of Benjamin O. Aigboboh* ("*Aigboboh Decl.*"), the *Request for Judicial Notice*, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  August 6, 2018            By _____
                                          */s/ Benjamin O. Aigboboh*
                                         P. CRAIG CARDON
                                         BENJAMIN O. AIGBOBOH
                                         ALYSSA M. SHAUER

                                         *Attorneys for Defendant*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION..................................................................................................1

II.     RELEVANT ALLEGATIONS ...........................................................................2

    A.      Plaintiff's Alleged Purchases .................................................................2

    B.      Plaintiff's Individual And Class Claims................................................2

III.    STANDARDS APPLICABLE TO MOTION TO DISMISS ...........................3

    A.      Federal Rule Of Civil Procedure 12(b)(1)............................................3

    B.      Federal Rules Of Civil Procedure 12(b)(6) And 9(b)..........................3

IV.     THE MOTION SHOULD BE GRANTED ........................................................4

    A.      Plaintiff Lacks Standing To Pursue Non-California Claims For A
        Nationwide Class.......................................................................................4

    B.      Plaintiff Does Not Have Standing To Pursue Injunctive Relief..........4

    C.      Plaintiff's Individial Claims Based On The Purchased Products Fail ......................6

        1.      Plaintiff's CLRA, FAL, And UCL Fraudulent Prong Claims Fail
            Because No Reasonable Consumer Would Be Deceived In The
            Manner Alleged ...............................................................................6

            a.      No Reasonable Person Viewing The Sole Packaging
                Statement Would Be Deceived As Alleged By Plaintiff..................7

            b.      No Reasonable Person Viewing The Website Statements
                Would Be Deceived As Alleged By Plaintiff.................................10

            c.      The *Complaint*'s Attempt To Combine The Disparate
                Statements Fails.............................................................................12

        2.      Plaintiff's Claims Under The Unlawful And Unfair Prongs Of The
            UCL Fail.........................................................................................13

        3.      Plaintiff's MMWA Claim Fails....................................................13

            a.      Plaintiff Has Not Alleged Warranty Claims Under California
                 Law ..............................................................................................14

             b.      Plaintiff Has Not Alleged A "Written Warranty" Under The
                 MMWA .........................................................................................14

             c.      Plaintiff Has Not Alleged Notice And An Opportunity To
                 Cure..............................................................................................15

        4.      Plaintiff's State Law Warranty Claims Fail .................................15

a.   Plaintiff Has Not Alleged Pre-Suit Notice ........................................15

b.   The *Complaint* Fails To State A Claim For Breach of
Express Warranty ........................................................................16

c.   The *Complaint* Fails To State A Claim For Breach Of The
Implied Warranty Of Merchantability...............................................16

5.   Plaintiff's Unjust Enrichment Claim Fails ...................................................18

6.   Plaintiff's Negligent Misrepresentation Claim Fails....................................19

a.   The Economic Loss Rule Bars The Negligent
Misrepresentation Claim ..................................................................19

b.   The *Complaint* Does Not State A Negligent
Misrepresentation Claim ..................................................................20

7.   Plaintiff's Fraud Claim Fails ......................................................................21

D.   Plaintiff's Claims For, And Seeking, Equitable Relief Should Be Dismissed.........21

1.   Even If Plaintiff Is Entitled To Pursue Restitution, The Request For
Disgorement Of All Revenues Must Be Dismissed ......................................22

E.   Plaintiff's Claims For Damages Arising From Certain Products And The
Website Statements Must Be Dismissed For Failure To Meet The CLRA
Notice Requirements ...............................................................................23

V.   CONCLUSION .................................................................................................24

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allen v. Similasan Corp.*
2013 U.S. Dist. LEXIS 139874 (S.D. Cal. Sept. 27, 2013) ......................................24

*Alvarez v. Chevron Corp.*
656 F.3d 925 (9th Cir. 2011)..........................................................................16

*Anderson v. Hain Celestial Grp., Inc.*
87 F. Supp. 3d 1226 (N.D. Cal. 2015) ...............................................................5

*Astiana v. Hain Celestial Grp., Inc.*
783 F.3d 753 (9th Cir. 2015)..........................................................................18

*Azoulai v. BMW of N. Am. LLC*
2017 U.S. Dist. LEXIS 57121 (N.D. Cal. Apr. 13, 2017)...............................12, 16

*Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*
2017 U.S. Dist. LEXIS 114210 (N.D. Cal. July 21, 2017) ....................................23

*Babaian v. Dunkin' Brands Grp. Inc.*
2018 U.S. Dist. LEXIS 98673 (C.D. Cal. June 12, 2018).......................................5

*Bates v. UPS*
511 F.3d 974 (9th Cir. 2007)...........................................................................5

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .....................................................................................3

*Bird v. First Alert, Inc.*
2014 U.S. Dist. LEXIS 176391 (N.D. Cal. Dec. 19, 2014) .................................6, 22

*Birdsong v. Apple, Inc.*
590 F.3d 955 (9th Cir. 2009)..........................................................................17

*Bohac v. Gen. Mills, Inc.*
2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) ....................................17

*Brazil v. Dole Food Co.*
935 F. Supp. 2d 947 (N.D. Cal. 2013) ..............................................................15

*Carrea v. Dreyer's Grand Ice Cream*
475 Fed. Appx. 113 (9th Cir. Apr. 5, 2012) .........................................................8

*Cattie v. Wal-Mart Stores, Inc.*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ..............................................................24

*Cheramie v. HBB, Ltd. Liab. Co.*
  545 Fed. Appx. 626 (9th Cir. 2013) ...................................................................21

*Clemens v. DaimlerChrysler Corp.*
  534 F.3d 1017 (9th Cir. 2008).........................................................................14

*In re ConAgra Foods, Inc.*
  908 F. Supp. 2d 1090 (C.D. Cal. 2012)............................................................14

*Corcoran v. CVS Health Corp.*
  2016 U.S. Dist. LEXIS 99797 (N.D. Cal. July 29, 2016) ...................................4

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018)...........................................................................5

*Davis v. HSBC Bank Nev., N.A.*
  691 F.3d 1152 (9th Cir. 2012)........................................................................7

*Dei Rossi v. Whirlpool Corp.*
  2013 U.S. Dist. LEXIS 153682 (E.D. Cal. Oct. 24, 2013) ................................17

*Donohue v. Apple, Inc.*
  871 F. Supp. 2d 913 (N.D. Cal. 2012) .............................................................15

*Durkee v. Ford Motor Co.*
  2014 U.S. Dist. LEXIS 122857 (N.D. Cal. Sept. 2, 2014).................................22

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*
  2015 U.S. Dist. LEXIS 109805 (N.D. Cal. Aug. 19, 2015)...............................22

*Ebner v. Fresh, Inc.*
  838 F.3d 958 (9th Cir. 2016)..........................................................................7

*Freeman v. Time, Inc.*
  68 F.3d 285 (9th Cir. 1995)...........................................................................7

*Gasser v. Kiss My Face, LLC*
  2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23, 2017) ................................5

*Girard v. Toyota Motor Sales, U.S.A., Inc.*
  316 Fed. Appx. 561 (9th Cir. 2008) .................................................................7

*Golden v. Home Depot, U.S.A., Inc.*
  2018 U.S. Dist. LEXIS 91182 (E.D. Cal. May 31, 2018).................................20

*Hadley v. Kellogg Sales Co.*
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ..........................................................18

*Hairston v. S. Beach Bev. Co.*
  2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012)............................8, 14

*Harris v. Las Vegas Sands L.L.C.*
    2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013) .......................................................8

*Henderson v. Gruma Corp.*
    2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011)..........................................................9

*Hill v. Roll Int'l Corp.*
    195 Cal. App. 4th 1295 (2011)..............................................................................................6, 7

*Hindsman v. GM LLC*
    2018 U.S. Dist. LEXIS 92319 (N.D. Cal. June 1, 2018) ...............................................3, 4, 14

*Hodgers-Durgin v. De La Vina*
    199 F.3d 1037 (9th Cir. 1999)..................................................................................................5

*In re Sony PS3 "other OS" Litig. v. Sony Computer Entm't Am., Inc.*
    551 Fed. Appx. 916 (9th Cir. 2014) .......................................................................................14

*Janda v. T-Mobile, USA, Inc.*
    2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009) ......................................................24

*Johnson v. Nissan N. Am., Inc.*
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ...............................................................................3, 4

*Jones v. Conagra Foods, Inc.*
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ...................................................................................15

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2004)............................................................................................4, 21

*Kent v. Hewlett-Packard Co.*
    2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010) .........................................................17

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003)..........................................................................................................23

*Laster v. T-Mobile U.S., Inc.*
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................................................24

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003)...................................................................................................6

*Lectrodryer v. Seoulbank*
    77 Cal. App. 4th 723 (2000)...................................................................................................19

*Littlehale v. Hain Celestial Grp., Inc.*
    2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2, 2012) .......................................................15

*Lopez v. Nissan N. Am., Inc.*
    201 Cal. App. 4th 572 (2011)..................................................................................................21

*Majd v. Bank of Am., N.A.*
    243 Cal. App. 4th 1293 (2015) .................................................................................20

*Manchouck v. Mondeléz Int'l, Inc.*
    2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sep. 26, 2013) ..........................................9

*Martinez v. Welk Grp., Inc.*
    2011 U.S. Dist. LEXIS 58718 (S.D. Cal. June 2, 2011) .............................................23

*McKinniss v. Kellogg USA*
    2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sep. 19, 2007) ......................................3, 20

*McVicar v. Goodman Global, Inc.*
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) .........................................................................15

*Mexia v. Rinker Boat Co., Inc.*
    174 Cal. App. 4th 1297 (2009) .................................................................................17

*Mullins v. Premier Nutrition Corp.*
    2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) (Seeborg, J.) ....................23

*Mullins v. Premier Nutrition Corp.*
    2018 U.S. Dist. LEXIS 10810 (N.D. Cal. Jan. 23, 2018) (Seeborg, J) ................21, 22

*Munning v. Gap, Inc.*
    238 F. Supp. 3d 1195 (N.D. Cal. 2017) ...............................................................21, 22

*Nada Pac. Corp. v. Power Eng'g & Mfg.*
    73 F. Supp. 3d 1206 (N.D. Cal. 2014) .......................................................................20

*Nguyen v. Nissan N. Am., Inc.*
    2017 U.S. Dist. LEXIS 55501 (N.D. Cal. Apr. 11, 2017) .......................................4, 22

*Outboard Marine Corp. v. Sup. Ct.*
    52 Cal. App. 3d 30 (1975) .........................................................................................23

*Park-Kim v. Daikin Indus.*
    2016 U.S. Dist. LEXIS 104248 (C.D. Cal. Aug. 3, 2016) ...........................................15

*Phillips v. Ford Motor Co.*
    2015 U.S. Dist. LEXIS 88937 (N.D. Cal. July 7, 2015) .............................................22

*Punian v. Gillette Co.*
    2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016) ................................6, 13, 19

*Rhynes v. Stryker Corp.*
    2011 U.S. Dist. LEXIS 58286 (N.D. Cal. May 31, 2011) ..........................................22

*Romero v. Flowers Bakeries, LLC*
    2015 U.S. Dist. LEXIS 59498 (N.D. Cal. May 6, 2015) ..............................................5

*Romero v. Flowers Bakeries, LLC*
    2016 U.S. Dist. LEXIS 15868 (N.D. Cal. Feb. 8, 2016)........................................................4

*Rugg v. Johnson & Johnson*
    2018 U.S. Dist. LEXIS 101727 (N.D. Cal. June 18, 2018) ...............................................7, 8, 16

*Ruszecki v. Nelson Bach USA LTD.*
    2015 U.S. Dist. LEXIS 151946 (S.D. Cal. June 25, 2015) ...........................................15, 23, 24

*Sebastian v. Kimberly-Clark Corp.*
    2017 U.S. Dist. LEXIS 208544 (S.D. Cal. Dec. 18, 2017) .......................................................24

*Sensible Foods, LLC v. World Gourmet, Inc.*
    2012 U.S. Dist. LEXIS 21446 (N.D. Cal. Feb. 21, 2012).........................................................9

*Shane v. Fla. Bottling, Inc.*
    2017 U.S. Dist. LEXIS 141069 (C.D. Cal. Aug. 9, 2017) .......................................................6

*Simpson v. The Kroger Corp.*
    219 Cal. App. 4th 1352 (2013).................................................................................................7

*Smith v. Allmax Nutrition, Inc.*
    2015 U.S. Dist. LEXIS 171897 (E.D. Cal. Dec. 23, 2015)......................................................19

*Stathakos v. Columbia Sportswear Co.*
    2017 U.S. Dist. LEXIS 72417 (N.D. Cal. May 11, 2017) .......................................................23

*Strumlauf v. Starbucks Corp.*
    192 F. Supp. 3d 1025 (N.D. Cal. 2016) ...................................................................17, 19, 20

*Taylor v. Nike, Inc.*
    2017 U.S. Dist. LEXIS 22875 (D. Or. Feb. 17, 2017) ...........................................................19

*Tietsworth v. Sears, Roebuck & Co.*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................................................15

*Torrent v. Ollivier*
    2016 U.S. Dist. LEXIS 119284 (C.D. Cal. Sep. 2, 2016) .......................................................24

*Vitt v. Apple Computer, Inc*
    469 Fed. Appx. 605 (9th Cir. 2012) .......................................................................................12

*Voss v. Commissioner*
    796 F.3d 1051 (9th Cir. 2015)...............................................................................................18

*Welk v. Beam Suntory Import Co.*
    124 F. Supp. 3d 1039 (S.D. Cal. 2015) .................................................................................20

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008)...................................................................................................6

*Woo v. Home Loan Grp., L.P.*
   2007 U.S. Dist. LEXIS 98521 (S.D. Cal. July 27, 2007)......................................................23

*Zeiger v. WellPet LLC*
   2018 U.S. Dist. LEXIS 7530 (N.D. Cal. Jan. 17, 2018) ...........................................................3, 4

<u>Statutes</u>

7 U.S.C. § 6502(1) ........................................................................................................................9

7 U.S.C. § 6502(21) ......................................................................................................................9

7 U.S.C. § 6503(a) .........................................................................................................................9

15 U.S.C. § 2301(6)(A)-(B) ........................................................................................................14

15 U.S.C. § 2310(e) .....................................................................................................................15

Cal. Bus. & Prof. Code § 17200...................................................................................................6

Cal. Civ. Code § 1770 ....................................................................................................................6

Cal. Civ. Code § 1782(a)..............................................................................................................23

Cal. Comm. Code § 2-314(2)(e)...................................................................................................18

Cal. Comm. Code § 2-314(2)(f) ...................................................................................................18

Cal. Comm. Code § 2314(1) ........................................................................................................17

Cal. Comm. Code § 2607(3)(A) ...................................................................................................15

<u>Other Authorities</u>

75 Fed. Reg. 63552 .......................................................................................................................8

Fed. R. Civ. P. 9(b)....................................................................................................................3, 10

Fed. R. Civ. P. 12(b)(1) .................................................................................................................3

Fed. R. Civ. P. 12(b)(6) .................................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In his *Complaint*, Plaintiff seeks to piggyback on the glut of "all natural" claims filed across the country.  To do this, he attempts to turn a single label statement—"***Active Ingredients Derived from Natural Sources***"—that appears in small font on the side or back of kitchen cleaning products, into a representation that the products are all natural products that contain no "unnatural" or "synthetic" ingredients:



| FRONT | BACK | SIDE |
| --- | --- | --- |

Because it is clear that no reasonable consumer could interpret the statement "Active Ingredients Derived from Natural Sources" to mean that the products are all natural and contain all natural ingredients, Plaintiff cherry-picks words, ignores the actual statement and its context, recites irrelevant ingredient effects *ad nauseum* (including allegedly harmful effects caused by *ingestion* of certain ingredients in kitchen soaps, lotions, cleaners, and sprays), and seeks to combine the sole label statement with a diffuse medley of irrelevant, unspecific, and non-actionable website statements (taken out of context) that Plaintiff, who did not make any purchases online, did not allege he saw or relied on in the notice letter he sent to WSI before filing suit.  None of this, however, changes the fact that each of Plaintiff's claims, which are based on an implausible interpretation of the sole label statement, fails as a matter of law.

The implausibility of Plaintiff's purported interpretation is not the *Complaint*'s only defect. Plaintiff, a California resident that made his alleged purchases in California, lacks standing to represent a nationwide class pursuing non-California claims.  The *Complaint* does not allege facts sufficient to establish standing to pursue injunctive relief, or damages under the Consumers Legal Remedies Act for certain products and *all* alleged website statements.  Plaintiff seeks to pursue

1    equitable claims and relief he is not entitled to because he has an adequate remedy at law or that

2    are not available under California law.  Finally, several claims fail for reasons separate from the

3    failure to allege a misrepresentation including failure to allege adequate notice or facts sufficient

4    to establish required elements.  The *Complaint* should be dismissed.

## II.    RELEVANT ALLEGATIONS

**A.    Plaintiff's Alleged Purchases**

Plaintiff, a California resident, allegedly purchased the following Williams-Sonoma-brand kitchen products "on numerous occasions":  (1) Fleur de Sel All-Purpose Cleaner; (2) Meyer Lemon Hand Lotion; (3) Meyer Lemon Hand Soap; (4) Pink Grapefruit Countertop Spray; and (5) White Gardenia Dish Soap (the "Purchased Products").  Dkt. 1 ¶ 15.  Plaintiff, who made his purchases in a single retail store, alleges he bought the products "because he saw the labeling, advertising, [WSI's] website, and read the packaging, which represented that the[y] are 'natural' and contain 'Active Ingredients Derived from Natural Sources.'"  *Id*. ¶¶ 15-16.  Plaintiff allegedly "understood this to mean that he was purchasing natural products that did not contain any unnatural and/or synthetic ingredients," despite the fact no such statement appears on the Purchased Products, or in the website statements Plaintiff allegedly relied on.  *Id*.  ¶¶ 16, 27-31. Plaintiff further alleges that the Purchased Products "contain unnatural and/or synthetic ingredients," and that he "would not have purchased the[m] if he had known that they contained unnatural and/or synthetic ingredients."  *Id*. ¶ 7, 16.[1]

**B.    Plaintiff's Individual And Class Claims**

The *Complaint* asserts the following causes of action on behalf of Plaintiff, and a nationwide class and California subclass of persons that purchased the "Products":  (1) violation of the CLRA; (2) violation of the FAL; (3) violation of the UCL;[2] (4) violation of the MMWA; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) unjust enrichment; (8) negligent misrepresentation; and (9) fraud.  Dkt. 1 ¶¶ 3, 48-128.

---

[1]  Plaintiff also seeks to pursue claims arising from dozens of additional "household and personal care products" he did not purchase.  Dkt. 1 ¶¶ 3-7.

[2]  The first three claims are not asserted on behalf of the nationwide class.  Dkt. 1 ¶¶ 59, 68, 74.

1

### III.    STANDARDS APPLICABLE TO MOTION TO DISMISS

2

**A.    Federal Rule Of Civil Procedure 12(b)(1)**

3

Under Fed. R. Civ. P. 12(b)(1), a district court must dismiss a complaint if it lacks subject

4

matter jurisdiction to hear the claims alleged. *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d

5

1168, 1173 (N.D. Cal. 2017). "Standing is a threshold matter central to…subject matter

6

jurisdiction" and "addresses the constitutional requirement that a plaintiff allege a case or

7

controversy, which at an irreducible minimum, requires three elements:  (1) an injury that is (2)

8

fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed

9

by the requested relief." *Id.* (internal quotations omitted).

10

**B.    Federal Rules Of Civil Procedure 12(b)(6) And 9(b)**

11

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss should be granted when the complaint

12

fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

13

544, 570 (2007). "Plausibility requires more than 'a sheer possibility' of misconduct." *Hindsman*

14

*v. GM LLC*, 2018 U.S. Dist. LEXIS 92319, at *12 (N.D. Cal. June 1, 2018) (quoting *Ashcroft v.*

15

*Iqbal*, 556 U.S. 662, 678 (2009)).  "The court must be able to 'draw the reasonable inference' of

16

the defendant's liability based on a 'context-specific' review, 'judicial experience and common

17

sense.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678-79).  Although courts must accept well-pleaded

18

factual allegations as true, they "need not accept as true any unreasonable inferences, unwarranted

19

deductions of fact, or conclusory legal allegations cast in the form of factual allegations."

20

*McKinniss v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106, at *5 (C.D. Cal. Sep. 19, 2007).  In

21

ruling on a motion to dismiss, courts may consider documents whose contents are alleged in (but

22

not attached to) the complaint and whose authenticity no party questions, and matters subject to

23

judicial notice. *Id.*; *see also Hindsman*, 2018 U.S. Dist. LEXIS 92319, at **12-13.

24

Where, as here, a plaintiff alleges claims (CLRA, FAL, UCL, unjust enrichment, negligent

25

misrepresentation, fraud) that "sound[] in fraud or mistake," a complaint must also satisfy Fed. R.

26

Civ. P. 9(b). *Zeiger v. WellPet LLC*, 2018 U.S. Dist. LEXIS 7530, at *8 (N.D. Cal. Jan. 17, 2018).

27

Fed. R. Civ. P. 9(b) "requires that such claims state with particularity the circumstances

28

constituting fraud or mistake…including the who, what, when, where, and how of the misconduct

1    charged."  *Id.* at *8 (internal quotations and citations omitted).  The fraud allegations must "be

2    specific enough to give defendants notice of the particular misconduct…so that they can defend

3    against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor*

4    *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2004) (internal quotations omitted).

5                    **IV.    THE MOTION SHOULD BE GRANTED**

6    **A.    Plaintiff Lacks Standing To Pursue Non-California Claims For A Nationwide Class**

7            Plaintiff, a California resident that made his alleged purchases in California, attempts to

8    bring claims for violation of the MMWA, breach of express warranty, breach of implied warranty

9    of merchantability, unjust enrichment, negligent misrepresentation, and fraud on behalf of a

10   nationwide class.  Dkt. 1 ¶¶ 48, 87, 96, 102, 112, 117, 124.  Plaintiff, however, lacks standing to

11   bring these non-California claims on behalf non-California consumers.  *See, e.g.*, *Hindsman*, 2018

12   U.S. Dist. LEXIS 92319, at **46-49 (dismissing MMWA and express warranty claims asserted by

13   California-named plaintiffs "on behalf of non-California consumers"); *Zeiger*, 2018 U.S. Dist.

14   LEXIS 7530, at **15-17 (dismissing nationwide class allegations because "[p]laintiffs are all

15   residents of California, but purport to represent a nationwide class, creating the significant burden

16   of nationwide discovery."); *Johnson*, 272 F. Supp. 3d at 1174-76 (dismissing MMWA claims and

17   unjust enrichment claims asserted on behalf of residents of states in which named plaintiffs did not

18   reside); *Corcoran v. CVS Health Corp.*, 2016 U.S. Dist. LEXIS 99797, at *8 (N.D. Cal. July 29,

19   2016) ("[T]he consensus among courts in this District…is that named plaintiffs lack standing to

20   assert claims based on th[e]…laws" of states in which "no [named] plaintiff resides in, or alleges

21   to have suffered an injury….").[3]

22   **B.    Plaintiff Does Not Have Standing To Pursue Injunctive Relief**

23           "[T]o establish standing for prospective injunctive relief, a plaintiff must demonstrate that

24
_____

25   [3]  These claims are also subject to dismissal to extent it is unclear which state law Plaintiff alleges
     applies.  *Nguyen v. Nissan N. Am., Inc.*, 2017 U.S. Dist. LEXIS 55501, at *16 n.2 (N.D. Cal. Apr.
26   11, 2017) (dismissing unjust enrichment claim asserted on behalf of a nationwide class because
     plaintiff did :not specify which state's…law…appl[ies]…."); *Romero v. Flowers Bakeries, LLC*,
27   2016 U.S. Dist. LEXIS 15868, at *34 (N.D. Cal. Feb. 8, 2016) (dismissing nationwide unjust
     enrichment, fraud, negligent misrepresentation, and warranty claims for failure to "allege the
28   applicable law" because "courts in this district have held that, due to variances among state laws,
     failure to allege which state law governs a common law claim is grounds for dismissal.").

1    he not only suffered or is threatened with a concrete and particularized legal harm but also that

2    there is a sufficient likelihood that he will again be wronged in a similar way." *Gasser v. Kiss My*

3    *Face, LLC*, 2017 U.S. Dist. LEXIS 175273, at *10 (N.D. Cal. Oct. 23, 2017) (internal quotations

4    omitted); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) (standing

5    requires plaintiff to show "that she faces an imminent or actual threat of future harm caused by

6    [defendant's] allegedly false advertising.").  A "sufficient likelihood" requires a showing of a "real

7    and immediate threat of repeated injury." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).  It is a

8    plaintiff's burden to establish standing. *Gasser*, 2017 U.S. Dist. LEXIS 175273, at *10.

9         Here, Plaintiff has not alleged facts establishing that he faces an imminent or actual threat

10   of future harm.  Plaintiff alleges, only, that he "would purchase the products in the future if [WSI]

11   changed the composition…so that they conformed to their…labeling." Dkt. 1 ¶ 16.  Plaintiff's

12   future purchase, therefore, is "contingent on reformulation of the products," which is not a

13   circumstance that gives rise to standing to pursue injunctive relief. *Babaian v. Dunkin' Brands*

14   *Grp. Inc.*, 2018 U.S. Dist. LEXIS 98673, at *13 (C.D. Cal. June 12, 2018) (dismissing request for

15   injunctive relief supported by plaintiff's allegation that "he 'will likely purchase Class Products in

16   the future from [defendant] if [they] contain the Real Ingredients as represented.'").[4]  Even if it

17   were, "injunctive relief is limited to having the label accurately reflect the product's contents" not

18   "forc[ing] [defendant] to change the composition of its products." *Gasser*, 2017 U.S. Dist. LEXIS

19   175273, at *11 (internal quotations omitted).[5]  Plaintiff's request for injunctive relief should be

20   dismissed.  Moreover, because Plaintiff lacks standing, he "may not represent a class seeking that

21   relief," and the request for injunctive relief on behalf of the class must be dismissed. *Hodgers-*

22

23   [4]  *See also Gasser*, 2017 U.S. Dist. LEXIS 175273, at **10-12 (allegation that plaintiffs "would

24   purchase the Products again if [defendant] changed the composition so that they conformed to
     their 'natural' labeling and marketing" insufficient to "establish[] standing for injunctive relief"

25   because plaintiffs "failed to allege they would purchase the same Products with the same synthetic
     ingredients even if properly labeled….").

26   [5]  *See also Romero v. Flowers Bakeries, LLC*, 2015 U.S. Dist. LEXIS 59498, at *22 (N.D. Cal.
     May 6, 2015) ("Any injunctive relief the Court could grant would pertain only to [d]efendant's

27   labeling practice, and not to the ingredients that [d]efendant uses."); *Anderson v. Hain Celestial*
     *Grp., Inc.*, 87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015) (plaintiff's allegation "that she would

28   purchase the product in the future if it…did not contain non-natural ingredients is completely
     inconsistent…with any injunctive relief that could actually issue in this case….").

*Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also Bird v. First Alert, Inc.*, 2014 U.S. Dist. LEXIS 176391, at *13 (N.D. Cal. Dec. 19, 2014) (a named plaintiff with no standing to pursue "injunctive relief is not permitted to pursue [it] on behalf of unnamed class members.").

**C.     Plaintiff's Individial Claims Based On The Purchased Products Fail**

**1.     Plaintiff's CLRA, FAL, And UCL Fraudulent Prong Claims Fail Because No Reasonable Consumer Would Be Deceived In The Manner Alleged**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" Cal. Civ. Code § 1770.  The FAL "prohibits any unfair, deceptive, untrue, or misleading advertising." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotations omitted).  The UCL prohibits any "fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.[6]  Claims under the CLRA, FAL, and fraudulent prong of the UCL are governed by the "reasonable consumer" test.  *Williams*, 552 F.3d at 938.

To state a claim under this test, a plaintiff must allege that defendant made statements that are "likely to deceive" a reasonable consumer.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508.  "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (a plaintiff must "show potential deception of consumers acting reasonably in the circumstances—not just any consumers," the "least sophisticated consumer," or the "unwary consumer.").  "[T]he primary evidence in a false advertising case is the advertising itself."  *Williams*, 552 F.3d at 938.  "The reasonable consumer analysis requires that advertisements be 'read reasonably and in context.'"  *Shane v. Fla. Bottling, Inc.*, 2017 U.S. Dist. LEXIS 141069, at **11-12 (C.D. Cal. Aug. 9, 2017) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285,

---

[6]  The UCL has three "prongs" that prohibit "business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Punian v. Gillette Co.*, 2016 U.S. Dist. LEXIS 34164, at *16 (N.D. Cal. Mar. 15, 2016).  Each prong "provides a separate and distinct theory of liability." *Id.*  Plaintiff's unlawful and fraudulent prong claims (Dkt. 1 ¶¶ 73-85) are addressed in Section IV.C.2 *infra*.

290 (9th Cir. 1995)).  "Because the 'reasonable consumer' inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement…in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff."  *Rugg v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS 101727, at *9 (N.D. Cal. June 18, 2018) (citation omitted).[7]

Here, Plaintiff alleges he believed the Purchased Products contain 100% natural ingredients, despite the fact there is no such express statement on the products, their packaging, or the website.  Instead, Plaintiff asserts that he and others did and would reasonably interpret WSI's actual statements—one packaging statement and disparate website statements—to mean this, *i.e.*, that the Purchased Products are completely "natural products that did not contain any unnatural and/or synthetic ingredients," or "all of the ingredients in the [Purchased] Products are 'derived from natural sources.'"  Dkt. 1 ¶¶ 8, 16, 34; *see also* Dkt. 1 ¶¶ 1, 26.  When each statement is "read reasonably and in context," however, it is clear that no reasonable consumer could reach the conclusion(s) alleged by Plaintiff.[8]

### a. No Reasonable Person Viewing The Sole Packaging Statement Would Be Deceived As Alleged By Plaintiff

The *Complaint* alleges that the packaging contains a ***single*** allegedly actionable statement (which is not alleged be on WSI's website, either as part of an image of the product packaging or otherwise):  "***Active Ingredients Derived from Natural Sources***."  Dkt. 1 ¶ 31.  Thus, despite the *Complaint*'s conclusions to the contrary, the packaging does not state that "the Products are

---

[7]  As such, courts regularly dismiss claims based on implausible interpretations at the pleadings stage.  *See, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal because "claim that the reasonable consumer would be deceived" was "not plausible"); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (affirming dismissal because theory for how advertising was misleading "defie[d] common sense…."); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561, 563 (9th Cir. 2008) (affirming dismissal because the "allegations failed to state an UCL, CLRA, or negligent misrepresentation claim because a reasonable consumer would not be misled by [defendant's] statements."); *Freeman*, 68 F.3d at 229 (affirming dismissal because defendant's promotion, "when read reasonably and in context," did not make representation alleged by plaintiff); *Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1370-71 (2013) (affirming order sustaining demurrer because "plaintiff has not, and as a matter of law cannot, allege that a reasonable consumer would have been misle[]d by [defendant's] labels…."); *Hill*, 195 Cal. App. 4th at 1301-07 (affirming trial court order sustaining demurrer because no reasonable consumer would be misled by advertising in the manner alleged by plaintiff).

[8]  Plaintiff's FAL, UCL, and CLRA claims are also subject to dismissal, in whole or in part, for the reasons set forth in Sections IV.C.2, IV.D, and IV.E *infra*.

1   'natural'" or "naturally-derived." Dkt. 1 ¶¶ 26, 31. Indeed, neither the word "natural" alone nor

2   the phrase "naturally-derived" appears anywhere on the product. Where the word "Natural" does

3   appear, it is part of a larger phrase, in small font on the side or back of the product (where it is

4   underneath information such as directions, cautions, first aid instructions, and ingredients), and as

5   an **adjective** to describe the **sources** from which the Purchased Products' **active** ingredients are

6   **derived**. *Aigboboh Decl.* ¶¶ 2-6, Exs. A-E.

7       When "read reasonably and in context," it is clear that no reasonable consumer would read

8   the phrase "Active Ingredients Derived from Natural Sources" to mean that the Purchased

9   Products are completely "natural" products that do not contain any "unnatural" or "synthetic"

10  ingredients, or that all ingredients (**active and inactive**) are derived from natural sources.[9]

11  Plaintiff offers no facts to support his conclusory interpretation (*see Rugg*, 2018 U.S. Dist. LEXIS

12  101727, at **7-10 (dismissing claims because plaintiffs did "not allege[] facts showing that a

13  reasonable consumer would understand 'hypoallergenic' to have the definition attributed to it by

14  [p]laintiffs")), and his "selective interpretation of individual words or phrases from [the]

15  labeling"—which ignores that the adjective "natural" refers to the **sources** from which the

16  Purchased Products' **active** ingredients were derived, not the Purchased Products themselves or all

17  ingredients contained therein—"cannot support a CLRA, FAL, or UCL claim." *Hairston*, 2012

18  U.S. Dist. LEXIS 74279, at *13.[10]

19      In fact, the plain language provides no basis for Plaintiff's contention that the presence of

20

21  [9]  *See, e.g., Rugg*, 2018 U.S. Dist. LEXIS 101727, at *8 (dismissing CLRA, FAL, and UCL claims with prejudice because it is "completely implausible that a reasonable consumer would understand under the

22  use of the term 'hypoallergenic' on the product's label to mean" what plaintiffs alleged consumers would understand it to mean); *Hairston v. S. Beach Bev. Co.*, 2012 U.S. Dist. LEXIS 74279, at

23  *13 (C.D. Cal. May 18, 2012) (no reasonable consumer would read "'all natural' language… immediately followed by the…statement 'with vitamins'…and believe that the added vitamins are

24  suppose[d] to be 'all natural vitamins.'").

25  [10]  *See also Carrea v. Dreyer's Grand Ice Cream*, 475 Fed. Appx. 113, 115 (9th Cir. Apr. 5, 2012) (rejecting attempt to interpret words on label out of context and affirming dismissal with prejudice

26  of CLRA, FAL, and UCL claims); *Harris v. Las Vegas Sands L.L.C.*, 2013 U.S. Dist. LEXIS 185587, at *15 (C.D. Cal. Aug. 16, 2013) (dismissing CLRA, FAL, and UCL claims with

27  prejudice because "phraseology and word placement would need to be taken completely out of context to be misunderstood…."). The FTC has also noted that context matters to how "natural"

28  is defined and whether it is an "appropriate descriptor" and has therefore refused to prohibit use of "natural" and "to establish a general definition." 75 Fed. Reg. 63552, 63584, 63586.

1   "unnatural" or "synthetic" ingredients makes the statement "Active Ingredients Derived from

2   Natural Sources" false or misleading.  On the contrary, under any reasonable interpretation, this

3   phrase is entirely consistent with the presence of purportedly "unnatural" or "synthetic"

4   ingredients.  The dictionary definition of the word "derive" is "to produce or obtain (a substance)

5   from another." *Aigboboh Decl.* ¶ 7, Ex. F.[11]  Thus, the phrase "Active Ingredients Derived from

6   Natural Sources" means that the "Active Ingredients" were produced from another substance (the

7   "Natural Sources").  *See id.* ¶ 8, Ex. G (Merriam-Webster noting that "[p]etroleum is derived from

8   coal tar" is an example of the ordinary use of the phrase "derived from").  This is consistent with

9   the *Complaint*'s alleged definition of synthetic as "'a substance that is formulated or manufactured

10  by a chemical process or by a process that chemically changes a substance extracted from

11  naturally occurring plant, animal, or mineral sources….'"  Dkt. 1 ¶ 36 (quoting 7 U.S.C. §

12  6502(21)).[12]  Because Plaintiff cannot plausibly allege why products advertised as containing

13  "Active Ingredients Derived from Natural Sources" would not include "unnatural" or "synthetic"

14  ingredients, his claims should be dismissed.[13]

15      Tellingly, Plaintiff does not allege that the Purchased Products' ingredients (whether active

16  or not) are not derived from natural sources, or that a purportedly "unnatural" or "synthetic"

17  ingredient cannot be derived from natural sources.[14]  In fact, although the *Complaint* identifies

---

18

19  [11]  *See also Aigboboh Decl.* ¶ 8, Ex. G ("derive" means "to obtain (a chemical substance) actually or theoretically from a parent substance."); *id.* ¶ 9, Ex. H ("derive" means "[t]o produce or obtain

20  (a compound) from another substance by chemical reaction."); *id.* ¶ 10, Ex. I ("derived from" means "formed or prepared by (a chemical or physical process affecting another substance).").

21  [12]  Notwithstanding this fact, Plaintiff offers no reason why the definition found in 7 U.S.C. § 6502(21) of federal Organic Foods Production Act ("OFPA") should be applied to non-food

22  products that are not marketed as "organic."  *See* 7 U.S.C. §§ 6502(1), 6503(a)).

23  [13]  *See, e.g.*, *Manchouck v. Mondeléz Int'l, Inc.*, 2013 U.S. Dist. LEXIS 138877, at **7-11 (N.D. Cal. Sep. 26, 2013) (dismissing claims with prejudice because plaintiff did "not plausibly alleged

24  why the statement 'made with real fruit' would not include mechanically separated fruit purée."); *Sensible Foods, LLC v. World Gourmet, Inc.*, 2012 U.S. Dist. LEXIS 21446, at *17-18 (N.D. Cal. Feb. 21, 2012) (dismissing claims because "[i]t is simply implausible — indeed, it strains the

25  boundaries of the English language — to say that products made primarily from potatoes are not made of 'veggies'" or that use of "the words 'veggie' and 'apple,' when used to describe products

26  containing veggies and apples, are 'literal falsit[ies].'"); *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at **33-34 (C.D. Cal. Apr. 11, 2011) ("With Garden Vegetables" not

27  misleading to because the product did "in fact contain vegetables that can be grown in a garden.").

28  [14]  Again, the *Complaint* confirms that a "synthetic" substance is "formulated or manufactured by a chemical process or by a process that chemically changes a substance ***extracted from naturally***

---

certain allegedly "unnatural" or "synthetic" *active* ingredients in *some* of the Purchased Products,[15] it does not allege that any of these allegedly active ingredients were not derived from natural sources.  On the contrary, the allegations in the *Complaint*—as confusing and opaque as they are—appear to confirm that certain *active* ingredients actually are derived from natural sources.  *See* Dkt. 1 ¶ 36(j) (alleging that Citric Acid "is a naturally occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form.").

>            **b.      No Reasonable Person Viewing The Website Statements Would Be
>                        Deceived As Alleged By Plaintiff**

Because Plaintiff cannot establish that a reasonable consumer would read the sole label statement as he alleges, he attempts to rely on a diffuse medley of website statements (which does not include "Active Ingredients Derived from Natural Sources") to support his *conclusion* that reasonable consumers believe the Purchased Products are completely natural products that do not contain any "unnatural" or "synthetic" ingredients or that all ingredients are derived from natural sources.  The *Complaint* does not allege facts sufficient to support these conclusions.

As an initial matter, the website statement allegations do not satisfy Fed. R. Civ. P. 9(b).  The *Complaint* fails to connect any alleged website statement to any specific product, allege when the statements were made or when Plaintiff viewed them, or allege facts sufficient to establish that any consumer would have read and relied on any of these disparate statements that are not tied to any specific product on a website featuring thousands of products.  *See* Section IV.C.1.b-c *infra*.

Moreover, a review of each individual statement proves that no reasonable consumer could

---

*occurring plant, animal, or mineral sources*….'"  Dkt. 1 ¶ 36 (quoting 7 U.S.C. § 6502(21)) (emphasis added).  Moreover, nothing in the ingredient laundry list (Dkt. 1 ¶ 36(aa)-(ddd)) establishes that the ingredients are not derived from natural sources.  Most of the opaque discussion focuses on irrelevant facts (*e.g.*, whether a kitchen cleaning product ingredient is "linked to birth defects following e*xcessive oral ingestion*") and irrelevant standards (*e.g.*, the OFPA).  Notably, Plaintiff does not allege any physical harm caused by the kitchen products.

[15]  The alleged active ingredients are citric acid (Meyer Lemon Hand Soap, Pink Grapefruit Countertop Spray, White Gardenia Dish Soap), dimethicone (Meyer Lemon Hand Lotion); potassium sorbate (Meyer Lemon Hand Lotion, Meyer Lemon Hand Soap), sodium chloride (Meyer Lemon Hand Soap, White Gardenia Dish Soap); and sodium lauryl sulfate (White Gardenia Dish Soap).  Dkt. 1 ¶ 37.  The *Complaint* does not identify any active ingredient in the Fleur De Sel All-Purpose Cleaner, let alone allege facts establishing that the unidentified active ingredients were not derived from natural sources.

interpret them to mean that the products are completely natural products and do not contain any "unnatural" or "synthetic" ingredients, or that all ingredients are derived from natural sources:

•   ***Website Representation No 1***.  "Our exclusive essential oil blends nourish your skin with plant-based ingredients and contain no harmful parabens or chlorine." Dkt. 1 ¶ 6.

The *Complaint* does not allege which Purchased Products (if any) this statement applies to, or even what "plant-based ingredients" means.  Nonetheless, the only way to interpret this statement is that the "essential oil blends" used in unspecified products contain "plant-based ingredients" that will "nourish your skin."  A reasonable consumer could not read this to mean that the Purchased Products are all natural or only contain natural ingredients.

•   ***Website Representation No. 2***.  "Completely natural ingredients leave the whole room with a fresh feeling and give you peace of mind too.  There are no dangerous chemicals like ammonia or chlorine to worry about, and no lauramide DEA or parabens either — only natural oils, essences and cleansing elements.  Because these soaps are biodegradable, they're good for the environment too.  None of our products are tested on animals."  Dkt. 1 ¶ 27.

Again, the *Complaint* does not allege which of the Purchased Products this statement applies to (if any).  Even assuming this statement was used to describe some or all of the Purchased Products, the first sentence merely represents that the natural ingredients in the products leave a room feeling fresh (not that all ingredients are completely natural).  The second sentence provides that the products to which this statement applies do not contain certain chemicals (the *Complaint* does not allege they do) and, instead, have "natural oils, essences and cleansing elements."  This is not, and could not be reasonably interpreted to be, a representation that the Purchased Products are all natural or contain all natural ingredients.

•   ***Website Representation No 3***.  Certain, unspecified products "reflect[] our culinary roots with a bright, clean fragrance that blends into the kitchen naturally."  Dkt. 1 ¶¶ 28-29.

Although the *Complaint* (again) fails to identify the specific Purchased Products (if any) this statement applies to, its import is clear—the scents of the products (*e.g.*, lemon, grapefruit, gardenia) blend with other smells in a kitchen.  No reasonable consumer would interpret this statement to mean that the Purchased Products are natural because they do not contain "unnatural" or "synthetic" ingredients, or that all ingredients are derived from natural sources.  Moreover, a

claim that a product's scents blend "naturally" into a kitchen is nothing more than non-actionable "puffery."  *Azoulai v. BMW of N. Am. LLC*, 2017 U.S. Dist. LEXIS 57121, at *24 (N.D. Cal. Apr. 13, 2017) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.  To be actionable, a statement must be 'specific and measurable' and capable of being proven true or false.") (internal citations omitted).  There is nothing "specific or measurable" about whether a scent blends "naturally" into a kitchen, and whether this is true is inherently subjective.  *See*, *e.g.*, *Vitt v. Apple Computer, Inc*, 469 Fed. Appx. 605, 607 (9th Cir. 2012) (affirming dismissal on basis that descriptors such as "durable," "reliable," and "high performance" were not actionable); *Azoulai*, 2017 U.S. Dist. LEXIS 57121, at *24 ("[T]here is nothing 'specific and measurable' about the word 'safely.'").

- • **Website Representation No 4**.  WSI's "uplifting seasonal spray is made with plant-based ingredients to create a light, clean scent that gently and evenly dissipates throughout the room."  Dkt. 1 ¶ 30.

The import of this statement is clear.  The unspecified "seasonal spray" contains certain "plant-based ingredients" that create scent.  There is no representation that the Purchased Products (which are not "seasonal") are all natural or do not contain "unnatural" or "synthetic" ingredients.

### c.   The *Complaint*'s Attempt To Combine The Disparate Statements Fails

Finally, because, it is clear that no single statement can be read as Plaintiff alleges, Plaintiff seeks to conflate and confuse the sole packaging statement with disparate, unspecific, and non-actionable website statements to state his claims.  *See* Dkt. 1 ¶ 27 (alleging "WSI cultivates the Williams Sonoma [*sic*] image as a natural, non-synthetic, health and eco-friendly brand through its statements.").  For the reasons set forth above, however, even if the packaging statement ("Active Ingredients Derived from Natural Sources") were combined with the disparate website statements regarding unspecified products, Plaintiff's claims would still fail.  For example, no person could read the product statement "Active Ingredients Derived from Natural Sources" and a website statement that the product has "a bright, clean fragrance that blends into the kitchen naturally" and reasonably conclude that the product is a completely natural product that does not contain any "unnatural" or "synthetic" ingredients, or that all ingredients (active and inactive) are derived from natural sources.  In fact, when the packaging statement and website statements are read together

they confirm, at best, that *certain* ingredients are derived from natural sources, plant-based, or natural.  Thus, even in combination, a reasonable consumer could not conclude that the products are all natural or contain all natural ingredients.[16]

> **2.     Plaintiff's Claims Under The Unlawful And Unfair Prongs Of The UCL Fail**

"The unlawful prong of the UCL prohibits anything that can properly be called a business practice and that at the same time is forbidden by law" and, as such, "permits injured consumers to 'borrow' violations of other laws and treat them as unfair competition that is independently actionable." *Punian*, 2016 U.S. Dist. LEXIS 34164, at *54 (internal quotations omitted). Plaintiff's unlawful claim is premised on violations of the CLRA and FAL.  Dkt. 1 ¶ 76.  Because he has failed to allege violations of either statute, Plaintiff cannot "plausibly allege violation of the unlawful prong of the UCL." *Punian*, 2016 U.S. Dist. LEXIS 34164, at *55.  "The unfair prong of the UCL prohibits a business practice that violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id*. at *55.  "[A]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Id*.  Plaintiff's unfair claim, which merely recites the elements of such a claim (*see* Dkt. 1 ¶¶ 79-83), entirely overlaps with his CLRA and FAL claims.  Because Plaintiff has failed to allege a claim under either statute, however—or even allege a false statement—Plaintiff's claim under the unfair prong should be dismissed.  *See Punian*, 2016 U.S. Dist. LEXIS 34164, at *56.

> **3.     Plaintiff's MMWA Claim Fails**

The *Complaint* alleges WSI violated the MMWA by "making express warranties that the

---

[16]  Even if a reasonable consumer could read the label statement (not alleged to appear on the website) and the website statements (not alleged to be on labels) as alleged by Plaintiff, the *Complaint* does not allege facts proving that any individual (other than, apparently, Plaintiff) went to a store, picked a product, read the label statement (on the side or back of the packaging, and below myriad other information), read all alleged website statements (statements not connected to any specific product or a specific webpage), *and* combined and relied on all of the disparate statements to conclude that the Purchased Products are all natural.  Although Plaintiff, who did not make any purchases online, alleges (in conclusory fashion that directly contradicts his CLRA notice letter (*see* Section IV.E *infra*; *Aigboboh Decl.* ¶ 11, Ex. J)) that he read and relied on all statements, his allegations render him, in all likelihood, a class of one.

Products are 'natural' and contain 'Active Ingredients Derived from Natural Sources.'"  Dkt. 1 ¶ 91.  The MMWA claim fails for at least three reasons:  (1) Plaintiff has not alleged warranty claims under California law; (2) Plaintiff has not alleged the existence of a "written warranty" under MMWA; and (3) Plaintiff does not allege he provided with the required opportunity to cure.

### a.    Plaintiff Has Not Alleged Warranty Claims Under California Law

The MMWA "merely provides a federal remedy for breach of warranties under state law.  Thus, [MMWA] claims stand or fall with…express and implied warranty claims under state law." *Hindsman*, 2018 U.S. Dist. LEXIS 92319, at *15 (internal quotations omitted); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Because Plaintiff's claims for breach express warranty and implied warranty of merchantability fail as set forth below (*see* Sections IV.C.1.a-c *infra*), the MMWA claim must be dismissed.  *See*, *e.g.*, *In re Sony PS3 "other OS" Litig. v. Sony Computer Entm't Am., Inc.*, 551 Fed. Appx. 916, 920 (9th Cir. 2014) ("Because [p]laintiffs fail to adequately allege a state warranty claim, the MMWA claim fails.").

### b.    Plaintiff Has Not Alleged A "Written Warranty" Under The MMWA

Even if the *Complaint* stated state law warranty claims (it does not), the MMWA claim would fail because it does not allege a "written warranty" under the MMWA.  Under the MMWA, the term "written warranty" is either (1) a "written affirmation of fact or written promise…which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time," or (2) an "undertaking in writing…to refund, repair, replace, or take other remedial action…."  15 U.S.C. § 2301(6)(A)-(B).  Even assuming that WSI represented that the products were all natural products that contain no "unnatural" or "synthetic" ingredients (it did not), such a statement is not an "assertion that the product will be defect free or that it will meet a specified level of performance over a specified period of time" or a "a promise to take any remedial action." *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) ("100% Natural" not a written warranty under MMWA); *see also Hairston*, 2012 U.S. Dist. LEXIS 74279, at **18-19 ("all natural with vitamins" does not "meet the [MMWA] definition of 'written warranty'…."). These statements, which "merely describe[e] the materials contained in a product," are "considered

1    products descriptions" that do not qualify as "written warranties under the MMWA…." *Ruszecki*

2    *v. Nelson Bach USA LTD.*, 2015 U.S. Dist. LEXIS 151946, at *10 (S.D. Cal. June 25, 2015).[17]

### c.    Plaintiff Has Not Alleged Notice And An Opportunity To Cure

4         To state an MMWA claim, a plaintiff allege he provided notice of breach and "a

5    reasonable opportunity to cure…."  15 U.S.C. § 2310(e); *see also Tietsworth v. Sears, Roebuck &*

6    *Co.*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010).  Because Plaintiff does not allege either (Dkt. 1

7    ¶¶ 86-94), the MMWA claim must be dismissed.  *See*, *e.g.*, *Park-Kim v. Daikin Indus.*, 2016 U.S.

8    Dist. LEXIS 104248, at **60-63 (C.D. Cal. Aug. 3, 2016) (MMWA dismissed claim "for failure

9    to plead sufficient notice."); *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1058 (C.D.

10   Cal. 2014) (MMWA claim dismissed for failure because "to afford [defendant] a reasonable

11   opportunity to cure….").

### 4.    Plaintiff's State Law Warranty Claims Fail

13        Plaintiff's state law warranty claims fail because he has not alleged the required pre-suit

14   notice.  Even if notice were pled, the express and implied warranty claims would fail because the

15   *Complaint* does not allege facts sufficient to state a claim.

### a.    Plaintiff Has Not Alleged Pre-Suit Notice

17        "To avoid dismissal of a breach of warranty claim in California, '[a] buyer must plead that

18   notice of the alleged breach was provided to the seller within a reasonable time after discovery of

19   the breach.'"  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929 (N.D. Cal. 2012) (quoting *Alvarez*

20   *v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)); *see also* Cal. Comm. Code § 2607(3)(A).

21   Because "[t]he purpose of the notice requirement is to allow the breaching party to cure the breach

22   and thereby avoid the necessity of litigating the matter in court," the Ninth Circuit has "require[d]

23   the plaintiff to show that he has given the seller notice of the breach before filing suit." *Donohue*,

---

[17] *See also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013) (dismissing MMWA claim with prejudice because "All Natural" claim is "mere product description…."); *Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 893 (N.D. Cal. 2012) (MMWA claim based on "labeling food products as 100% natural" dismissed with prejudice); *Littlehale v. Hain Celestial Grp., Inc.*, 2012 U.S. Dist. LEXIS 162530, at **2-3 (N.D. Cal. July 2, 2012) (dismissing MMWA claim with prejudice because "the statements 'Pure Natural' and 'All Natural'…are mere product descriptions, and do not fall within the [MMWA's] definition of 'warranty.'").

871 F. Supp. 2d at 929.  The pre-suit notice requirement applies to both express and implied

warranty claims.  *See*, *e.g.*, *Alvarez*, 656 F.3d at 932 (affirming dismissal of express and implied

warranty claims for failure to establish pre-suit notice).  Because the *Complaint* does not allege

that Plaintiff provided any notice of any alleged breaches of warranty prior to filing suit (Dkt. 1 ¶¶

95-110), the express warranty and implied warranty claims must be dismissed.

### b.   The *Complaint* Fails To State A Claim For Breach of Express Warranty

"To prevail on a breach of express warranty claim, [p]laintiff[] must prove: (1) the seller's

statements constitute an affirmation of fact or promise or a description of the goods; (2) the

statement was part of the basis of the bargain; and (3) the warranty was breached."  *Rugg*, 2018

U.S. Dist. LEXIS 101727, at *11.  Here, Plaintiff alleges that the statement "Active Ingredients

Derived from Natural Sources" constitutes an "express warranty" that the Purchased Products do

not "contain unnatural and/or synthetic ingredients."  Dkt. 1 ¶¶ 97-99.  This cannot be the case

because the statement "Active Ingredients Derived from Natural Sources" is not a representation

that the product does not contain any "unnatural and/or synthetic ingredients."  *See* Section

IV.C.1.a *supra*.[18]  Moreover, Plaintiff has not alleged facts establishing a breach of the actual

statement—namely that the Purchased Products do not contain "Active Ingredients Derived from

Natural Sources."  *See* Section IV.C.1.a *supra*; *see also Rugg*, 2018 U.S. Dist. LEXIS 101727, at

*11 (dismissing express warranty claim because plaintiffs "failed to allege facts showing that the

products in question are not hypoallergenic under a plausible definition of that term.").  Plaintiff's

warranty claims based on purported website statements fail for the same reason (and because

many of the alleged representations are "puffery.")  *See* Section IV.C.1.b *supra*; *see also Azoulai*,

2017 U.S. Dist. LEXIS 57121, at *25 (dismissing express warranty claim based on "puffery").

### c.   The *Complaint* Fails To State A Claim For Breach Of The Implied Warranty Of Merchantability

"Unless excluded or modified…, a warranty that the goods shall be merchantable is

---

[18]  The same holds true under the reasonable consumer test—a test that "[s]everal courts" in the
Ninth Circuit "have suggested….applies to express warranty claims under California law."  *Rugg*,
2018 U.S. Dist. LEXIS 101727, at *10; *see also* Section IV.C.1 *infra*.

implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1).  "Unlike express warranties, liability for an implied warranty does not depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon whether the[ ] product is merchantable under the code."  *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, at **30-31 (N.D. Cal. Mar. 26, 2014) (internal quotations omitted).

"The implied warranty 'provides for a minimum level of quality.'"  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)).  "A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for ordinary use."  *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).[19]  Notwithstanding the *Complaint*'s conclusions to contrary, Plaintiff does not, and could not, allege any facts establishing that the Purchased Products (cleaning products, soaps, and lotions) are not fit for their ordinary purpose (cleaning and/or moisturizing).  *See, e.g.*, *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1032 (N.D. Cal. 2016) (dismissing implied warranty claim because no allegation that the products do not "meet the most basic degree of fitness….").

Plaintiff's implied warranty claim, therefore, rests on his contentions that the Purchased Products are not "merchantable" because they "were not 'adequately contained, packaged, and labeled as the agreement may require,'" and "did not 'conform to the promise or affirmations of fact made on the container or label.'"  Dkt. 1 ¶ 104.  Courts have rejected use of these allegations—without facts establishing that the product is unfit for its ordinary use—to state an implied warranty claim.  *See, e.g.*, *Strumlauf*, 192 F. Supp. 3d at 1032 ("[A] well-pled claim must assert that the product was unfit for its ordinary use."); *Dei Rossi v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 153682, at **16-19 (E.D. Cal. Oct. 24, 2013) (rejecting argument that defendant's

---

[19]  *See also Kent v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 76818, at *10 (N.D. Cal. July 6, 2010) (because the implied warranty of merchantability only "provides for a minimum level of quality"—and does not impose a general requirement that goods precisely fulfill the expectation of the buyer"—a "defect must render the product unfit for its ordinary purpose.") (internal quotations omitted); *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.  Such fitness is shown if the product is in safe condition and substantially free of defects….").

"refrigerators violate the implied warranty of merchantability because they do not conform to the promise or affirmation that they abide by the Energy Star requirements" because "even though a product may be labeled with specific adjectives, that description does not change the ordinary purpose that it is used for.").  Even assuming these allegations are sufficient to state a claim, Plaintiff's contention lack merit.

First, there was no "agreement" that the Purchased Products would be "adequately contained, packaged, and labeled…."  Cal. Comm. Code § 2-314(2)(e).  The only "agreement" alleged is the purported express warranty created by the labels themselves, and an interpretation of Section 2-314(2)(e) that makes the product labels the "agreement" would render it duplicative of Cal. Comm. Code § 2-314(2)(f), which requires goods to "[c]onform to the promises or affirmations on the container or label if any."  *See Voss v. Commissioner*, 796 F.3d 1051, 1059 (9th Cir. 2015) ("[C]ourts should not interpret statutes in a way that renders a provision superfluous.").  Second, the implied warranty claim based on the allegation that the Purchased Products failed to "conform to the promises or affirmation of fact made on the container or label" fails for the same reason as his express warranty claim—the statement "Active Ingredients Derived from Natural Sources" does not warrant that the products do not contain any "unnatural" or "synthetic" ingredients.  *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017) ("When an implied warranty of merchantability cause of action is based…on whether the product…'[c]onforms to the promises or affirmations of fact' on the packaging…, the implied warranty…claim rises and falls with express warranty claims brought for the same product.").

### 5.     Plaintiff's Unjust Enrichment Claim Fails

"[T]here is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted).  The Ninth Circuit, however, has held that "unjust enrichment…[is] not irrelevant in California law" because it "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id.* (citation omitted).  Accordingly, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."  *Id.* (internal quotations and citations

1   omitted).  "[T]here cannot be a claim based on quasi contract," however, "where there exists a

2   valid express contract covering the same subject matter."  *Strumlauf*, 192 F. Supp. 3d at 1032-33

3   (quotations omitted).  Thus, because Plaintiff has asserted an express warranty claim, his unjust

4   enrichment claim must be dismissed.  *Id*. at 1033 ("Even though there is no written contract at

5   issue in the case, Plaintiffs still allege an express contract by alleging [breach of express

6   warranty].  Thus, no quasi-contract claim may stand."); *see also Smith v. Allmax Nutrition, Inc.*,

7   2015 U.S. Dist. LEXIS 171897, at **27-28 (E.D. Cal. Dec. 23, 2015) (dismissing cause of action

8   for unjust enrichment where plaintiff also claimed breach of express warranty).

9          Even if Plaintiff had not alleged the existence of a contract, the unjust enrichment claim

10   would still fail.  When construed as a quasi-contract claim seeking restitution, unjust enrichment

11   requires proof of defendant's unjust receipt and retention of a benefit at plaintiff's expense.

12   *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).  As set forth above, the sole label

13   statement and disparate website statements are neither false nor misleading.  *See* Section IV.C.1

14   *supra*.  As such, any receipt and retention of a benefit by WSI could not be unjust.[20]

15          **6.      Plaintiff's Negligent Misrepresentation Claim Fails**

16          Plaintiff's negligent misrepresentation claim fails for at least two reasons:  (1) it is barred

17   by the economic loss rule; and (2) Plaintiff has failed to allege facts sufficient to state a claim.

18          **a.      The Economic Loss Rule Bars The Negligent Misrepresentation Claim**

19          "The economic loss doctrine provides that a plaintiff's tort recovery of economic damages

20   is barred unless such damages are accompanied by some form of harm to person or property, or

21   the action falls under an exception."  *Strumlauf*, 192 F. Supp. 3d at 1035.  "Thus, in actions for

22   negligence, liability is limited to damages for physical injuries and recovery of economic loss is

23   not allowed."  *Id*.  "Under the rule, a plaintiff may recover in tort only where he or she can allege

24

---

25   [20]  Moreover, because "unjust enrichment…is simply a 'theory underlying a claim that a defendant
     has been unjustly conferred a benefit through mistake, fraud, coercion, or request'…, failure to

26   allege a substantive claim for relief — such as one under the UCL, FAL, or CLRA — warrants
     dismissal of any additional claim for unjust enrichment."  *Taylor v. Nike, Inc.*, 2017 U.S. Dist.

27   LEXIS 22875, at *24 (D. Or. Feb. 17, 2017) (quoting *Astiana*, 783 F.3d at 762) (applying
     California law).  Thus, because Plaintiff's "underlying causes of action fail," his "claim for unjust

28   enrichment cannot stand" and must be dismissed.  *Punian*, 2016 U.S. Dist. LEXIS 34164, at *56
     (internal quotations and citations omitted).

personal injury or 'damage to 'other property,' that is, property *other than the product itself.'*" *Nada Pac. Corp. v. Power Eng'g & Mfg.*, 73 F. Supp. 3d 1206, 1221 (N.D. Cal. 2014) (quoting *Jimenez v. Sup. Ct.*, 29 Cal. 4th 473, 482-83 (2002)) (emphasis in original).  Plaintiff has not alleged any physical harm to himself or any property.  The harm alleged is purely economic— namely, that he purchased products he "would not have…if the true facts had been known."  Dkt. 1 ¶ 122; *see also* Dkt. 1 ¶ 45.  The negligent misrepresentation claim should be dismissed.[21]

### b.    The *Complaint* Does Not State A Negligent Misrepresentation Claim

"The elements of negligent misrepresentation are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages."  *Majd v. Bank of Am., N.A.*, 243 Cal. App. 4th 1293, 1307 (2015).  The *Complaint* does not allege facts establishing any required element.  There are no facts alleged establishing that the statement "Active Ingredients Derived from Natural Sources" is false or misleading.  *See* Section IV.C.1.a *supra*.  Even if there were, because no reasonable consumer would read the statement "Active Ingredients Derived from Natural Sources" to mean that the products contain no "unnatural" or "synthetic" ingredients, there can be no justifiable reliance.  *McKinniss*, 2007 U.S. Dist. LEXIS 96106, at *15 ("Even assuming, arguendo, that the characteristics of the Froot Loops box constitute misrepresentations, [p]laintiffs cannot establish justifiable reliance because, again, [p]laintiffs cannot establish that the reasonable consumer would rely on these representations in assuming that Froot Loops contains actual fruit.").  The same holds true for the alleged website statements.  *See* Section IV.C.1.a *supra*.

Additionally, a "negligent misrepresentation claim requires a positive assertion, not merely

---

[21] *See, e.g.*, *Golden v. Home Depot, U.S.A., Inc.*, 2018 U.S. Dist. LEXIS 91182, at **33-35 (E.D. Cal. May 31, 2018) (dismissing negligent misrepresentation claim because plaintiff "has also not identified any injury not purely economic in nature, or any other special relationship or situation which would warrant an exception to the economic loss rule."); *Strumlauf*, 192 F. Supp. 3d at 1035 (dismissing negligent misrepresentation claim because plaintiffs "did not suffer any non-monetary damage" as a result of purchase of underfilled lattes); *Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) (holding that the economic loss rule bars negligent misrepresentation claim based on allegedly misleading labels on bourbon bottles).

1    an omission." *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011) (internal

2    quotations omitted).  Thus, to the extent the negligent misrepresentation claim is based on alleged

3    omissions (Dkt. 1 ¶¶ 120-21 (alleging "negligently omitted material facts" and "negligent…

4    omissions")), it must be dismissed.  *Cheramie v. HBB, Ltd. Liab. Co.*, 545 Fed. Appx. 626, 627-28

5    (9th Cir. 2013) (affirming dismissal of negligent misrepresentation claim because plaintiff did not

6    "allege any affirmative representations...."); *Lopez*, 201 Cal. App. 4th at 596 (same).

7            **7.        Plaintiff's Fraud Claim Fails**

8            "The elements of a cause of action for fraud in California are:  (a) misrepresentation (false

9    representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent

10   to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Kearns*, 567

11   F.3d at 1126 (internal quotations omitted).  The *Complaint* does not allege facts establishing the

12   required elements.  There is no misrepresentation alleged (*see* Section IV.C.1 *supra*); as such,

13   there can be no scienter or intent to defraud.  The *Complaint* also fails to facts establishing

14   justifiable reliance on the sole statement on the Purchased Products' packaging or the disparate

15   and unspecific website statements (many of which constitute "puffery").  *See id.*

16   **D.      Plaintiff's Claims For, And Seeking, Equitable Relief Should Be Dismissed**

17           "The Supreme Court has stated it is axiomatic that a court should determine the adequacy

18   of a remedy in law before resorting to equitable relief."  *Munning v. Gap, Inc.*, 238 F. Supp. 3d

19   1195, 1203 (N.D. Cal. 2017) (internal quotations omitted).  Consequently, "a plaintiff seeking

20   equitable relief must first demonstrate that her remedy at law is inadequate."  *Mullins v. Premier*

21   *Nutrition Corp.*, 2018 U.S. Dist. LEXIS 10810, at **4-5 (N.D. Cal. Jan. 23, 2018) (Seeborg, J.).

22   "Indeed, several courts in this district have barred claims for equitable relief—including claims for

23   violations of California consumer protection statutes—at the motion to dismiss stage where

24   plaintiffs have alleged other claims presenting an adequate remedy at law."  *Munning*, 238 F.

25   Supp. 3d at 1203 (collecting cases); *see also Mullins*, 2018 U.S. Dist. LEXIS 10810, at *5

26   ("[C]ourts in the Northern District have routinely dismissed equitable claims brought under the

27   UCL and CLRA on the pleadings—including claims for restitution—where the plaintiff fails to

28   establish that there is no adequate remedy at law available.").  This is true even where plaintiff

"attempts to plead equitable relief in the alternative" (*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 U.S. Dist. LEXIS 109805, at *27 (N.D. Cal. Aug. 19, 2015)), or "may have no remedy if her other claims fail" (*Munning*, 238 F. Supp. 3d at 1203).

Here, Plaintiff's UCL, FAL and unjust enrichment claims should be dismissed in their entirety.  The UCL and FAL "provide only for equitable relief."  *Munning*, 238 F. Supp. 3d at 1203.  The only remedy sought by Plaintiff for unjust enrichment—restitution—is equitable.  Dkt. 1 ¶ 115; *see also Mullins*, 2018 U.S. Dist. LEXIS 10810, at *5.  Plaintiff, however, has alleged claims seeking compensatory damages (*i.e.*, an adequate remedy at law) based on the same conduct giving rise to the UCL, FAL, and unjust enrichment claims.  *See* Dkt. 1 ¶¶ 58-85, 111-115.  Dismissal is, therefore, proper.[22]  Plaintiff's claims for equitable relief for his CLRA claim ("injunctive relief" and "restitution"), negligent misrepresentation ("equitable relief"), and fraud ("equitable relief")—and prayer for an order "of restitution and all of other forms of equitable monetary relief" and "requiring [WSI] to undertake a corrective advertising campaign," and for "injunctive relief as pleaded or as the Court may deem proper"—should be dismissed for the same reason.  Dkt. 1 ¶ 66, 123, 128 and Prayer for Relief at (f), (g), (h); *see also Nguyen*, 2017 U.S. Dist. LEXIS 55501, at *16 (dismissing claim for injunctive relief under the CLRA); *Phillips v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 88937, at *53 (N.D. Cal. July 7, 2015) (same); *Durkee v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 122857, at **6-7 (N.D. Cal. Sept. 2, 2014) (same).

### 1. Even If Plaintiff Is Entitled To Pursue Restitution, The Request For Disgorgement Of All Revenues Must Be Dismissed

In Count III (Violation of the UCL), Plaintiff request an order both "requiring [WSI] to…provide restitution to Plaintiff [and] disgorge all revenues obtained as a result of violations of

---

[22]  *See*, *e.g.*, *Munning*, 238 F. Supp. 3d at 1203-04 (dismissing UCL and FAL claims with prejudice because plaintiff "pleaded claims for breach of contract and breach of express warranty – which enable her to recover damages….");  *Nguyen*, 2017 U.S. Dist. LEXIS 55501, at **11-16 (dismissing UCL and unjust enrichment claims because "[p]laintiff has an adequate remedy at law in the form of [p]laintiff's claims for damages…to compensate for [plaintiff] the exact same alleged harm that forms the basis of [the] requests" for equitable relief) (internal quotations omitted);  *Bird*, 2014 U.S. Dist. LEXIS 176390, at *13 (dismissing UCL claim);  *Rhynes v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 58286, at **8-12 (N.D. Cal. May 31, 2011) (same).

the UCL….”  Dkt. 1 ¶ 85(b).  Non-restitutory disgorgement of “all revenues”—which Plaintiff seeks in addition to restitution—is not a remedy available under the UCL.  *Woo v. Home Loan Grp., L.P.*, 2007 U.S. Dist. LEXIS 98521, at *18 (S.D. Cal. July 27, 2007) (“A plaintiff bringing a UCL claim may not recover disgorgement beyond what it recoverable in restitution.”); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) (“This court has never approved of nonrestitutory disgorgement of profits as a remedy under the UCL.”).[23]  Thus, Plaintiff’s request for disgorgement of all revenues must be dismissed.[24]

## E.    Plaintiff’s Claims For Damages Arising From Certain Products And The Website Statements Must Be Dismissed For Failure To Meet The CLRA Notice Requirements

A plaintiff seeking damages under the CLRA must notify defendant of the “particular alleged [CLRA] violations,” and “demand that [defendant] correct, repair, replace, or otherwise rectify the goods or services” at least 30 days before filing the action.  Cal. Civ. Code § 1782(a).  The requirement’s purpose is “to provide and facilitate pre-complaint settlements…wherever possible and to establish a limited period during which such settlement may be accomplished.”  *Outboard Marine Corp. v. Sup. Ct.*, 52 Cal. App. 3d 30, 41 (1975).  “Courts require strict compliance with the notice requirement in order to further this purpose.”  *Ruszecki v. Nelson Bach USA LTD.*, 2015 U.S. Dist. LEXIS 151946, at *14 (S.D. Cal. June 25, 2015).

Plaintiff’s CLRA letter is deficient for at least two reasons.  *Aigboboh Decl.* ¶ 11, Ex. J.  First, the letter does not address any of the alleged website statements.  *Compare id. with* Dkt. 1 ¶¶

---

[23]  *See also Stathakos v. Columbia Sportswear Co.*, 2017 U.S. Dist. LEXIS 72417, at *28 (N.D. Cal. May 11, 2017) (“Under California law, a full refund may be available as a means for restitution only when plaintiffs prove the product had no value to them.”) (internal quotations omitted); *Mullins v. Premier Nutrition Corp.*, 2016 U.S. Dist. LEXIS 51140, at *18 (N.D. Cal. Apr. 15, 2016) (Seeborg, J.) (“Restitution under the UCL…must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes.  Thus, the proper measure for restitution is the value of the price paid minus the actual value of the product.”) (internal quotations and citations omitted).

[24]  *See, e.g.*, *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, 2017 U.S. Dist. LEXIS 114210, at *27 (N.D. Cal. July 21, 2017) (dismissing request for “an order [of] disgorgement of all profits gained by operation of the unfair business practices” because “such a request is improper and not permitted by the UCL.”); *Martinez v. Welk Grp., Inc.*, 2011 U.S. Dist. LEXIS 58718, at **10-12 (S.D. Cal. June 2, 2011) (striking request for “disgorgement of all revenues” because the UCL does not authorize this “nonrestitutory type [of disgorgement]….”); *Woo*, 2007 U.S. Dist. LEXIS 98521, at *18 (striking prayer for “disgorgement of “revenues, earnings, profits, compensation and benefits obtained by [d]efendants pursuant to [plaintiff’s] UCL claim.”).

6, 11, 26-30.  As such, Plaintiff's claims for CLRA damages based on the website statements should be dismissed.[25]  Second, the letter does not identify the Sunny Citrus Hand Soap, Sunny Citrus Dish Soap, Sunny Citrus Hand Lotion, and Sunny Citrus Room Spray.  *Compare Aigboboh Decl.* ¶ 11, Ex. J *with* Dkt. 1 ¶ 3.  Plaintiff's claim for CLRA damages arising from these products must also be dismissed.  *Ruszecki*, 2015 U.S. Dist. LEXIS 151946, at *14 ("Ninth Circuit courts have held that the plaintiff must provide notice for each particular product the plaintiff is seeking damages for under the CLRA, even when the products are substantially similar.").[26]

## V.  **CONCLUSION**

For the foregoing reasons, WSI respectfully requests that the Court grant the *Motion*, and dismiss the *Complaint* with prejudice.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  August 6, 2018              By _____
                                                        */s/ Benjamin O. Aigboboh*
                                                        P. CRAIG CARDON
                                                        BENJAMIN O. AIGBOBOH

                                                        *Attorneys for Defendant*

SMRH:486934527.10

---

[25]  *See*, *e.g.*, *Sebastian v. Kimberly-Clark Corp.*, 2017 U.S. Dist. LEXIS 208544, at *23-24 (S.D. Cal. Dec. 18, 2017) (dismissing claims for monetary relief under the CLRA arising from the use of the term "hypoallergenic" because the notice letter did "not specifically identify that this term was a 'particular alleged violation'…."); *Ruszecki*, 2015 U.S. Dist. LEXIS 151946, at *16 (dismissing CLRA damages claims based on allegedly false and misleading statements not identified in the CLRA notice letter); *Allen v. Similasan Corp.*, 2013 U.S. Dist. LEXIS 139874, **7-9 (S.D. Cal. Sept. 27, 2013) (dismissing claims based on misrepresentations not raised in CLRA notice letter).

[26]  Although district courts are split as to whether "dismissal of a CLRA claim for violation of [the] notice requirement should be granted with or without prejudice" (*Torrent v. Ollivier*, 2016 U.S. Dist. LEXIS 119284, at *7 (C.D. Cal. Sep. 2, 2016) (discussing cases)), Plaintiff's CLRA damages claims should be dismissed *with* prejudice.  *See*, *e.g.*, *Ruszecki*, 2015 U.S. Dist. LEXIS 151946, at **16-17 (dismissing with prejudice "damages claims under the CLRA insofar as they are based on products and alleged misrepresentations that were not specified in the CLRA."); *Janda v. T-Mobile, USA, Inc.*, 2009 U.S. Dist. LEXIS 24395, at *15 (N.D. Cal. Mar. 13, 2009) (dismissal with prejudice).  As the courts that have dismissed such claims with prejudice have confirmed, "the CLRA requires *strict* compliance with [its] notice requirements" because "[s]trict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation."  *Laster v. T-Mobile U.S., Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007). This is particularly true given that Plaintiff's attempts to plead the disparate and unspecific website statements is a clear attempt to avoid dismissal because the sole label statement—the only statement Plaintiff, who did not many any online purchases, claimed he viewed and relied on in his notice letter—cannot be reasonably interpreted to mean that the Purchased Products are all natural and/or contain all natural ingredients.