Daniel J. Orlowsky
**ORLOWSKY LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax;     (314) 455-7375
*dan@orlowskylaw.com*
*(Pro Hac Vice)*

Adam M. Goffstein
**GOFFSTEIN LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax:     (314) 455-7278
*adam@goffsteinlaw.com*
*(Pro Hac Vice)*

James A. Morris, Esq. (CSBN 296852)
*jmorris@jamlawyers.com*
Shane. A. Greenberg, Esq. (CSMN 210932)
*sgreenberg@jamlawyers.com*
**MORRIS LAW FIRM**
4111 W. Alameda Avenue, Suite 611
Burbank, CA 91505
Tel:     (747) 283-1144
Fax:   (747) 283-1143

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN KUTZA on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>Defendant. | Case No. 3:18-cv-03534-RS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing:<br>Date:              October 25, 2018<br>Time:              1:30 p.m.<br>Courtroom:      3<br><br>Complaint Filed:   June 13, 2018<br>Trial Date:          None Set |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   STANDARD OF REVIEW ........................................................................... 2

III.  THE MOTION SHOULD BE DENIED ...................................................... 3

   A.   The Court Should Reject Defendants' Arguments for Dismissal of the
      Nationwide Class Action Claims ........................................................... 3

     1.   Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations ..... 3

     2.   Defendant's Arguments Are Contrary to the Ninth Circuit's Decision
        in  *Melendres* .................................................................................. 4

   B.   The Court Should Reject Defendants' Arguments That Plaintiff Lacks
      Standing To Seek Injunctive Relief ....................................................... 7

   C.   Defendants' Arguments for Dismissal of Specific Claims Lack Merit ...... 8

     1.   Plaintiff's Allegations Satisfy the Reasonable Consumer Standard ...... 8

       a.   Under *Williams* and *Balser*, Whether the Labeling Has the Capacity
          to Deceive or Confuse Reasonable Consumers Is a Factual Issue
          Not Susceptible to Resolution on the Pleadings ........................... 9

       b.   Plaintiff's Claims Readily Satisfy the Reasonable Consumer Test ......... 12

       c.   Plaintiff's Website Allegations Satisfy Rule 9(b) .................................. 15

       d.   Plaintiff's Claims Regarding the Statements on Defendant's
          Website are Relevant to His Claims .................................................. 15

     2.   Plaintiff States a Claim Under the Unlawful And Unfair Prongs of
        the UCL ......................................................................................... 16

     3.   Plaintiff States a Claim Under the Magnuson-Moss Warranty Act ...... 17

       a.   Plaintiff Has Alleged Warranty Claims Under California Law ............ 17

       b.   Plaintiff Has Alleged a "Written Warranty" Under the MMWA .......... 17

       c.   Plaintiff Provided Adequate Notice .................................................. 18

     4.   Plaintiff Sufficiently States Causes of Action for State Warranty
        Claims .......................................................................................... 18

       a.   Defendants Received Sufficient Notice ............................................. 18

       b.   Plaintiff Sufficiently States an Express Warranty Claim .................... 18

       c.   Plaintiff Sufficiently States A Claim For Breach of the Implied
         Warranty of Merchantability .......................................................... 19

5.   Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed ................... 20

6.   Plaintiff's Negligent Misrepresentation Claim Should Not Be Dismissed ........................................................................................... 21

   a.   The Economic Loss Rule Does Not Apply to Plaintiff's Negligent Misrepresentation Claim ........................................ 21

   b.   Plaintiff Adequately States a Claim for Negligent Misrepresentation .................................................................. 22

7.   Plaintiff Adequately States a Claim for Fraud ........................... 22

D.   Plaintiff's Claims For Equitable Relief Can Be Pled in the Alternative to Any Legal Relief ........................................................................... 22

   1.   Plaintiff's Request For Disgorgement of All Revenues Obtained as a Result of Defendant's False Advertising Should Not Be Dismissed .......... 23

E.   Plaintiff's Claims For Damages Arising From The Website Statements Meet The CLRA Notice Requirements ........................................... 24

IV.   CONCLUSION .................................................................................... 25

1

2

3

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Aberin v. Am. Honda Motor Co.*
2018 WL 1473085 (N.D. Cal. Mar. 26, 2018)…………….....……………………..……………23

*Adkins v. Comcast Corp.*
2017 WL 3491973 (N.D. Cal. Aug. 1, 2017)…………………..……………..……22, 23

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S. Ct. 1937 (2009)…………..……………………...……………………...2

*Astiana v. Dreyer's Grand Ice Cream, Inc.*
2012 WL 2990766 (N.D. Cal. July 20, 2012)……………………………………10

*Astiana v. Hain Celestial Grp., Inc.*
783 F.3d 753 (9th Cir. 2015)…………………………………………………21

*Balser v. Hain Celestial Grp., Inc.*
640 F. App'x 694 (9th Cir. 2016)……………………………………………9, 10, 11

*Boswell v. Costco Wholesale Corp.*
2016 WL 3360701 (C.D. Cal. June 6, 2016)……………………………...……………20

*Brazil v. Dole Packaged Foods, LLC*
660 F. App'x 531 (9th Cir. 2016)……………………………………………………......9

*Brown v. The Hain Celestial Grp., Inc.*
913 F.Supp.2d 881 (N.D. Cal. 2016)…………………………………..……………19

*Bruton v. Gerber Prods. Co.*
2014 WL 172111 (N.D. Cal. Jan. 15, 2014) …………………………………………...…5

*Cabrales v. Castle & Cooke Mortg., LLC*
2015 WL 3731552 (E.D. Cal. June 12, 2015)………………………………………....23

*Casas v. Victoria's Secret Stores, LLC*
2014 WL 12708972 (C.D. Cal. Oct. 20, 2014)……………………………………...…3

*Chavez v. Blue Sky Beverage Co.*
268 F.R.D. 365 (N.D. Cal. 2010)………………………………………………………6

*Clemens v. DaimlerChrysler Corp.*
534 F.3d 1017 (9th Cir. 2008)………………………………………………………17

*Clothesrigger, Inc. v. GTE Corp.*

191 Cal. App. 3d 605 (1987)...............................................................6

*Colucci v. ZonePerfect Nutrition Co.*
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)..............................23

*Corcoran v. CVS Health Corp., Inc.*
2016 WL 4080124 (N.D. Cal. July 29, 2016)...............................7

*Cortez v. Global Ground Support, LLC*
2009 WL 4282076 (N.D. Cal. Nov. 25, 2009).............................23

*Cortez v. Purolator Air Filtration Prods. Co.*
23 Cal.4th 163 (2000)........................................................24

*Covell v. Nine West Holdings, Inc.*
2018 WL 558976 (S.D. Cal. Jan. 25, 2018).................................23

*Cruz v. Sky Chefs, Inc.*
2013 WL 1892337 (N.D. Cal. May 6, 2013)..............................3, 4

*Davidson v. Kimberly-Clark Corp.*
873 F.3d 1103 (9th Cir. 2017)............................................7, 8

*Duraflame, Inc. v. Hearthmark, LLC*
2013 WL 12177870 (N.D. Cal. Feb. 8, 2013)...............................14

*Ellsworth v. U.S. Bank, N.A.*
2014 WL 2734953 (N.D. Cal. June 13, 2014)................................5

*Eminence Capital, LLC v. Aspeon, Inc.*
316 F.3d 1048, 1052 (9th Cir. (2003).....................................2, 3

*Fagan v. Neutrogena Corp.*
2014 WL 92255 (C.D. Cal. Jan. 8, 2014)................................12, 16

*Fallick v. Nationwide Mut. Ins. Co.*
162 F.3d 410 (6th Cir. 1998)...............................................4

*Farar v. Bayer AG*
2017 WL 5952876 (N.D. Cal. Nov. 15, 2017).................................8

*Fletcher v. Security Pac. Nat'l Bank*
23 Cal.3d 442 (1979)........................................................24

*Forcellati v. Hyland's Inc.*
876 F. Supp. 2d 1155 (C.D. Cal. 2012)......................................6

*Freeman v. Time, Inc.*

68 F.3d 285 (9th Cir. 1995)……………………………………..………………………12

*Gasser v. Kiss My Face, LLC*
2017 WL 4773426 (N.D. Cal. Oct. 23, 2017)………………………..…………...11, 14, 18, 19

*Gillibeau v. City of Richmond*
417 F.2d 426 (9th Cir.1969)…………………………………………………………….3, 4

*Gregorio v. Clorox Company*
2018 WL 732673 (N.D. Cal. Feb. 6, 2018)…………………………….…...11, 12, 13, 18, 19

*Hannibal Pictures, Inc. v. Sonja Prods. Co.*
432 Fed. App'x 700 (9th Cir. 2011)………………………………………………….……22

*Hindsman v. GM LLC*
2018 U.S. Dist. LEXIS 92319 (N.D. Cal. June 1, 2018)…………………...………………6, 7

*In re 5-hour ENERGY Marketing and Sales Litig.*
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)…………………………………………………5

*In re Hydroxycut Mktg. and Sales Practices Litig.*
801 F. Supp. 2d 993 (S.D. Cal. 2011)………………………………………………………5

*In re Safeway Tuna Cases*
2016 WL 3743364 (N.D. Cal. July 13, 2016)…………………………..……………………22

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig*
2017 WL 3058563 (N.D. Cal. July 19, 2017)……………………………………………...5

*Janney v. General Mills*
2014 WL 1266299 (N.D. Cal. Mar. 26, 2015)……………………………………….………14

*Jepson v. Ticor Title Ins. Co.*
2007 WL 2060856  (W.D. Wash. May 1, 2007)…………………………….……………5

*Johnson v. Nissan N. Am., Inc.*
272 F. Supp. 3d 1168 (N.D. Cal. 2017)………………………………….……………7

*Jou v. Kimberly-Clark Corp.*
2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)……………………………....…12, 14, 15, 16

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*
315 F. App'x 603 (9th Cir. 2008)……………………………………………………...…22

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009)…………………………………………………………...15

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*

658 F.3d 1038 (9th Cir. 2011)……………………………………….…………18

*Matoff v. Brinker Restaurant Group*
439 F.Supp.2d 1035 (C.D. Cal. 2006)……………………………………………24

*Mazza v. American Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012)……………………...……………………………..7

*Melendres v Arpaio*
784 F.3d 1254 (9th Cir. 2015)……………………………………………4, 5, 6, 7

*Michael v. Honest Co., Inc.*
2016 WL 8902574 (C.D. Cal. Dec. 6, 2016)……………………...…………10

*Munning v. Gap, Inc.*
238 F. Supp. 2d 1195 (N.D. Cal. 2017)……………………………………………23

*Parino v. BidRack, Inc.*
838 F. Supp. 2d 900 (N.D. Cal. 2011)……………………………………………3

*Parker v. J.M. Smucker Co.*
2013 WL 4516156 (N.D. Cal. Aug. 23, 2013)……………………………...9, 10, 14

*Paulino v. Conopco, Inc.*
2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015)……………………………………..14

*Pecanha v. The Hain Celestial Group, Inc.*
2018 WL 534299 (N.D. Cal. Jan. 24, 2018)……………………………5, 11, 12

*People v. Thomas Shelton Powers, M.D., Inc.*
2 Cal.App.4th 330 (1992)………………………………………………24

*Perez v. Monster, Inc.*
149 F. Supp. 3d 1176 (N.D. Cal. 2016)……………………………………………20

*Riva v. Pepsico, Inc.*
82 F. Supp. 3d 1045, 1063 (N.D. Cal. 2015)……………………..…………………..3

*Ruszecki v. Nelson Bach USA LTD.*
2015 U.S. Dist. LEXIS 151946 (S.D. Cal. June 25, 2015)………………………..........25

*Segedie v. Hain Celestial Grp., Inc.*
2015 WL 2168374 (S.D.N.Y. May 7, 2015)……………………………………..11, 12

*Shank v. Presidio Brands, Inc.*
2018 WL 510169 (N.D. Cal. Jan. 23, 2018)…………………………..……...11, 13, 14

*Sloan v. GM LLC*

2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)……………………………….…..21

*Smith v. Jackson*
  84 F.3d 1213, 1217 (9th Cir. 1996)………...………………………………….2

*Spann v. J.C. Penney Corp.*
  2015 WL 1526559 (C.D. Cal. 2015)…………………………………………24

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016)………………………………………………………5

*Sosna v. Iowa*
  419 U.S. 393 (1974)………….…..……………………………………………4

*Stotz v. Mophie Inc.*
  2017 WL 1106104 (C.D. Cal. Feb. 27, 2017)……………………………………..5

*Vicuna v. Alexia Foods, Inc.*
  2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)……………………….…………..9, 23

*Viggiano v. Johnson & Johnson*
  2015 WL 12860480 (C.D. Cal. June 12, 2015)………………………………5, 6

*Williams v. Gerber Products*
  552 F.3d 934, 938 (9th Cir. 2008)………………………...……………..9, 10, 11, 16

*Zakaria v. Gerber Prods. Co.*
  2015 WL 3827654 (C.D. Cal. June 18, 2015)……………………….………..20, 22

*Zeiger v. WellPet LLC*
  304 F. Supp. 837 (N.D. Cal. 2018)…………………………...………………………7

**Statutes**

15 U.S.C. § 2301……………………………………………………………2

15 U.S.C. §2301(1)………………………………………………………17

15 U.S.C. § 2301(6)(A)…………………………………………………17

Cal. Bus & Prof. Code § 17205……………………………………………23

Cal. Com. Code § 2314(2)(f)……………………………………………20

**Other Authorities**

40 Fed. Reg. 25721 (1975)………………………………………………17

40 Fed. Reg. 25722 (1975)……………………………………………………………..17

U.C.C. § 2-314……………………………………...………………………………19, 20

**Rules**

Fed. R. Civ. P. 8(d)……………………………...…………………………………2, 21

Fed. R. Civ. P. 9(b)……………………………...……………………………………15

Fed. R. Civ. P. 12(b)(6)…………………………………….…………………………2

Fed. R. Civ. P. 15(a)(2)…………………………………….…………………………3

## I.   INTRODUCTION

Defendant Williams-Sonoma, Inc. ("Defendant" or "WSI") exploits consumers' preference for natural products by representing to consumers that its WSI household and personal care products (the "Products") are "natural" and "derived from natural sources."  Reasonable consumers, including Plaintiff Brian Kutza ("Plaintiff"), understand these terms to mean that the Products are comprised only of ingredients that exist in nature without the addition of any extra chemicals or anything artificial.  But the Products are not "natural" or "derived from natural sources" because they contain ingredients that are synthetic, non-natural, and highly chemically processed.

Defendant does not contest Plaintiff's assertions.  In fact, it concedes that its Products contain unnatural and synthetic ingredients.  Motion To Dismiss ("MTD") at 9.  Instead, Defendant's main argument is that it is implausible that a reasonable consumer would actually believe its label representations.  But this Court has repeatedly taken the view that the use of "natural" and "derived" on product labels could reasonably be understood to mean "all natural" or "100% natural" and thus contain no unnatural and/or synthetic ingredients.   Nevertheless, whether a label representation is misleading is a question of fact that cannot be decided at the pleading stage.

Defendant argues that Plaintiff lacks standing to assert common law claims on behalf of a nationwide class.  Defendant's motion to dismiss is an improper vehicle for dismissal of class allegations, however.  Moreover, the Ninth Circuit takes the position that if a Plaintiff has standing to bring his individual claims (which is not disputed here), then the standing inquiry is concluded and any arguments about whether they may represent other class members must wait for class certification.

Defendant's other arguments are equally unavailing.  Defendant's argument that Plaintiff lacks standing to seek injunctive relief is clearly not the case because Plaintiff has alleged facts establishing that he faces an imminent or actual threat of future harm.  Plaintiff alleges sufficient facts and provided Defendant with the necessary notice of his state warranty claims.  Plaintiff has accordingly established claims for breach of express and implied warranties, as well as a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (the "MMWA").  Plaintiff has also established a claim for unjust enrichment because, under Fed. R. Civ. P. 8(d) and Ninth Circuit law, a party is permitted to assert inconsistent alternative claims for relief.  Defendant's argument that the economic loss rule bars Plaintiff's negligent representation claim fails as a matter of law.  Plaintiff has also established claims for negligent misrepresentation and fraud. Defendant's arguments that Plaintiff's claims for, and seeking, equitable relief must be dismissed are incorrect as a matter of law.  Finally, Plaintiff's claims for damages arising from Defendant's website statements should not be dismissed because they were obviously alleged in Plaintiff's CLRA letter allegations. Accordingly, Defendant's motion to dismiss should be denied.

## II.    STANDARD OF REVIEW

In ruling on a motion to dismiss, "[a]ll allegations are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  If a complaint contains well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1959 (2009).  The Plaintiff's complaint easily meets this standard.

Moreover, dismissal "without leave to amend is not appropriate unless it is clear…that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

1048, 1052 (9th Cir. (2003); *see also* Fed. R. Civ. P. 15(a)(2).  Plaintiff respectfully requests leave

to amend if necessary.

### III.     THE MOTION SHOULD BE DENIED

#### A.     The Court Should Reject Defendants' Arguments for Dismissal of the Nationwide Class Action Claims

Defendant asks the Court to dismiss Plaintiff's nationwide allegations because Plaintiff

lacks standing to pursue non-California claims on behalf of non-California consumers.  MTD at 4.

That request is contrary to the law for two independent reasons set forth below.

#### 1.     Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations

Defendant does not challenge the standing of Plaintiff under the laws of his home state.

Instead, Defendant is seeking premature resolution of class allegations, at least with respect to a

nationwide class.  As this Court has explained, "[t]he Ninth Circuit has opined that 'compliance

with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim.'"  *Riva v.*

*Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1063 (N.D. Cal. 2015) (quoting *Gillibeau v. City of Richmond*,

417 F.2d 426, 432 (9th Cir.1969); *see also Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 909

(N.D. Cal. 2011) (same); "There are [three] convincing reasons" for concluding that motions to

dismiss class allegations are "improper":

> First, Rule 12(b)(6) permits a party to challenge a pleading on the basis that it
> fails "to state a claim upon which relief can be granted.'  But class treatment is a
> "procedural device," not a claim for relief.  Thus, by its plain language, Rule
> 12(b)(6) outs itself as the wrong device for attacking class treatment.  Second,
> decisions rendered under Rule 12(b)(6) and Rule 23 are subject to different
> standards of review.  [Third], Rule 23(f) provides a mechanism by which a
> plaintiff (or defendant) can petition for review of a denial (or grant) of class
> certification under Rule 23, whereas, de facto denials of 'classwide claims' under
> Rule 12(b)(6) are ineligible for immediate discretionary review (barring
> exceptional circumstances).

*Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014)

(emphasis added and internal citations omitted).  Although a few courts have resolved class

allegations at the pleading stage, that practice is contrary to the Ninth Circuit's decision in

*Gillibeau* and "it is in fact rare to do so in advance of a motion for class certification." *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *7 (N.D. Cal. May 6, 2013) (collecting authorities). Accordingly, the Court can and should reject Defendant's arguments on procedural grounds.

### 2.   Defendant's Arguments Are Contrary to the Ninth Circuit's Decision in *Melendres*

In *Melendres v Arpaio*, the Ninth Circuit explained that there are two rubrics for determining whether a lead plaintiff may pursue claims on behalf of unnamed class members: the "standing approach" and the "class certification approach."

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class…The "class certification approach," on the other hand, "holds that **once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded**, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

784 F.3d at 1261–62 (emphasis added, internal citations omitted).  The Ninth Circuit stated, "[w]e adopt the class certification approach," and warned against "conflat[ing] standing and class certification."  *Id.* at 1262.

As a result, "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."  *Id.; see also, e.g., Sosna v. Iowa*, 419 U.S. 393, 403 (1974) (once a named plaintiff establishes individual standing, the examination shifts "from the elements of justiciability to the ability of the named representatives to fairly and adequately protect the interests of the class").[1]

---

[1] *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23").

District courts have followed *Melendres* in a variety of consumer class actions where the defendant argued on a motion to dismiss that the plaintiff lacked standing to represent certain putative class members.  *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig¸* 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017); *Stotz v. Mophie Inc.*, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017).  Consistent with *Melendres*, numerous courts in the Ninth Circuit also have held that where a named plaintiff has established individual standing to bring claims in his or her own right, but asserts parallel common law claims arising under different states' laws on behalf of a putative class, the issue is resolved in connection with Rule 23's requirements.  *See Pecanha v. The Hain Celestial Group, Inc.*, 2018 WL 534299, at *3 (N.D. Cal. Jan. 24, 2018) (rejecting same argument Defendants make here); *Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *6 (C.D. Cal. June 12, 2015) (same); *In re 5-hour ENERGY Marketing and Sales Litig.*, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014) (same); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *31 (N.D. Cal. June 13, 2014) (same); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014) (same); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1004-5 (S.D. Cal. 2011) (same); *Jepson v. Ticor Title Ins. Co.*, 2007 WL 2060856, at *1-2 (W.D. Wash. May 1, 2007) (same).

Here, Defendant does not dispute that Plaintiff has standing to bring his individual claims for violation of the MMWA, breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, negligent misrepresentation, and fraud, and therefore under *Melendres* "the standing inquiry is concluded."  *Melendres*, 784 F.3d at 1262.  Defendant may counter that standing is "claim-specific," and therefore Plaintiff must demonstrate that he also has standing to bring separate "claims" under the laws of other states, but there are two problems with that argument.  The first is that it does not fit within any of the traditional three elements of standing—injury, traceability, and redressability—which have never posed a high bar to

justiciability anyway.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The named

Plaintiff satisfies each of those elements regardless of whether he represents out-of-state class

members.

Second, the "essential" issue in standing is whether the "representative parties . . . have a

direct and substantial interest" in the "dispute." *Melendres*, 784 F.3d at 1262; *Warth v. Seldin*,

422 U.S. 490, 498 (1975) (the "essential" question of standing "is whether the litigant is entitled to

have the court decide the merits of the dispute or of particular issues").  The dispute in a false

labeling case like this one is the same for Plaintiff and out-of-state class members "because

Defendant's conduct was uniform and likely affected consumers in every state in a similar

fashion." *Viggiano*, 2015 WL 12860480, at *6.  Notably, Defendant does not argue that

adjudicating the claims of out-of-state class members somehow involves resolution of materially

different facts or legal issues, and even if Defendant argues that is the case, under *Melendres* that

is a question about commonality or predominance, not standing.[2]

Finally, the decisions cited by Defendant are not instructive because they failed to cite

*Melendres* and are easily distinguishable from this case.  In *Hindsman v. GM LLC* 2018 U.S. Dist.

LEXIS 92319, (N.D. Cal. June 1, 2018), the court ignored *Melendres* and erroneously concluded

---

[2] Defendant also argues that these claims are "subject to dismissal to extent it is unclear which
state law Plaintiff alleges applies."  MTD at 20, fn. 10.  But whether differences in state laws are
material for purposes of class certification requires a case-by-case analysis of the facts, and even
where they are material, the issue can often be resolved by narrowing the class definition or
certifying subclasses. *See Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal.
2012) (denying motion to dismiss class allegations).  And even if the Court were to perform a
California choice of law analysis, the application of California law to non-California residents
hinges on whether "California has sufficiently significant contacts with the [non-residents']
claims."  *Id.* at 1160.  Where, as here, it is alleged that Defendant is headquartered in California
and the misrepresentation, or decisions regarding its implementation, emanated from California
(*Complaint* ¶17), courts have found that California has sufficiently significant contact with
Plaintiff's claims that application of California's consumer protection laws would not be arbitrary
or unfair. *See Chavez v. Blue Sky Beverage Co.* 268 F.R.D. 365, 379 (N.D. Cal. 2010); *Forcellati*,
876 F. Supp. 2d at 1160; *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-13 (1987).

1   that "the Ninth Circuit has not yet addressed whether state law claims brought on behalf of

2   putative class members by named plaintiffs from states different from the putative class must be

3   dismissed based on the named plaintiffs' lack of standing" and dismissed plaintiff's out-of-state

4   claims. *Id.*, at *46. But that is clearly contrary to the Ninth Circuit's adoption of the "class

5   certification approach" in *Melendres,* which held that courts do not have discretion to dismiss

6   nationwide allegations at the pleading stage. *Id.* at 1282. In both *Zeiger v. WellPet LLC*, 304 F.

7   Supp. 837, 844 (N.D. Cal. 2018) and *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1171

8   (N.D. Cal. 2017), the court relied on *Mazza v. American Honda Motor Co.,* 666 F.3d 581, 587 (9th

9   Cir. 2012), which precedes *Melendres*, in concluding that the named plaintiffs in those cases could

10   not assert state law claims under state laws they did not represent. *Zeiger,* 304 F. Supp. at 847;

11   *Johnson*, 272 F. Sup. 3d at 1175. And *Corcoran v. CVS. Health Corp., Inc.*, 2016 WL 4080124

12   (N.D. Cal. July 29, 2016) is not instructive because the plaintiffs did not cite *Melendres* and

13   apparently conceded (erroneously) that courts have discretion to dismiss nationwide allegations at

14   the pleading stage. *See id.* at *3. As a result, Defendants failed to cite any case that refused to

15   

16   

17   follow *Melendres*.

18   **B.    The Court Should Reject Defendants' Arguments That Plaintiff Lacks
        Standing To Seek Injunctive Relief**

19   

20       Defendant argues that Plaintiff lacks standing to seek injunctive relief because "Plaintiff

21   has not alleged facts establishing that he faces an imminent or actual threat of future harm." MTD

22   at 5. But that is clearly not the case. In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th

23   Cir. 2017), a case Defendant relies on in support of its argument that Plaintiff does not have

24   standing to seek injunctive relief (MTD at 19), the Ninth Circuit ruled that standing requires

25   plaintiff to show that "she faces an imminent or actual threat of future harm caused by

26   [defendant's] allegedly false advertising." *Id.* at 970. The court went on to define how a consumer

27   may face "an imminent threat or actual threat of future harm."

28

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 1115 (internal citations omitted); *Farar v. Bayer AG*, 2017 WL 5952876, at *9 (N.D. Cal. Nov. 15, 2017) (holding that, under *Davidson*, plaintiffs "established standing to seek injunctive relief" because "the allegations from all three plaintiffs are sufficient to allege a threat of future harm that plaintiffs will not purchase the Products although they would like to, or that they will reasonably, but incorrectly, assume that the Products have improved").

Likewise, here, Plaintiff contends that he would like to purchase the product in the future, but will be unable to rely on Defendant's advertising and labeling. *See Complaint* ¶ 16, 47.[3] As a result, Plaintiff's future purchase is not only contingent on Defendant accurately labeling its products, but he has also asked the Court to require Defendant to undertake a corrective advertising campaign. Accordingly, because Plaintiff will not purchase the Products although he would like to, and Plaintiff has expressed a current desire to purchase the Products but has no way to determine whether the representations on the packaging are true, Plaintiff has established standing to seek injunctive relief.

## C.   Defendants' Arguments for Dismissal of Specific Claims Lack Merit

### 1.   Plaintiff's Allegations Satisfy the Reasonable Consumer Standard

In an argument better served by a motion for summary judgment, Defendant argues that Plaintiff's claims under the CLRA, FAL, and fraudulent prong of the UCL are implausible

---

[3] Defendant incorrectly asserts that Plaintiff's request for injunctive relief is limited to reformulation of the products." MTD at 5. The *Complaint* does not even request this type of relief. Plaintiff specifically asks the Court "[f]or an order requiring Defendant to undertake a corrective advertising campaign" and "[f]or injunctive relief as pleaded or as the Court may deem proper." *Complaint* at ¶¶ 47; *Id.* at Prayer for Relief, ¶¶ g, f.

because no reasonable consumer viewing Defendant's statements that its Products are "natural," "derived from natural sources," have "plant-based ingredients," "contain "completely natural ingredients," and "blend into the kitchen naturally" would be deceived into believing that the Products are natural and do not contain any unnatural and/or synthetic ingredients.  MTD at 7-13. Such an argument is flawed both as a matter of procedure and of substance.  First, a reasonable consumer's interpretation of a labeling claim is not something that can be determined at the motion to dismiss stage.  Second, it is clear from the allegations that a reasonable consumer would be entirely justified in taking Defendant's representations and labeling claims at face value.

          **a.**      **Under *Williams* and *Balser*, Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings**

       "Whether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury."  *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016); *Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008) ([W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" on the pleadings absent a "rare situation.").[4]  This includes "natural" claims.  *See e.g., Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation."); *Parker v. J.M. Smucker Co.*, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (allegations that a reasonable consumer would believe that a product labeled as

---

[4] Defendant relies heavily on *Williams* in its Motion to Dismiss, but fails to address the Ninth Circuit's conclusion that the "reasonable consumer" test is a question of fact not appropriate for consideration on a motion to dismiss.  MTD at 6.

"all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law."). Accordingly, Defendant's argument that reasonable consumers would not be deceived by its labeling is not appropriate on a motion to dismiss.[5]

Against this weight of authority, Defendant argues that no reasonable consumer would be deceived by the labeling statement "ingredients derived from natural sources." MTD at 9. Defendant goes so far to claim that "derived from natural ingredients" means that the ingredients were produced from another substance (the 'Natural Sources')." *Id.* Thus, in Defendant's view, any reasonable interpretation of these terms is "entirely consistent with the presence of purportedly 'unnatural' or 'synthetic' ingredients." *Id.*

The flaw in that argument is that it requires the Court to resolve a question of fact about how a reasonable consumer would construe the labeling, which is precisely what *Williams* and *Balser* forbid. *See, e.g., Williams*, 552 F.3d at 938-39. In fact, the challenged statements here (e.g. "ingredients derived from natural sources") are not that different from the statement in *Williams* that the product was "made with 'fruit juice and other all natural ingredients.'" *Id.* at 936 (quoting labeling). *Williams* demonstrates that the fact that Defendant can propose one plausible interpretation of the labeling here cannot support dismissal because it is not the <u>only</u> plausible interpretation.

Defendant cites a litany of cases that have dismissed claims based on implausible interpretations of advertising and labeling at the pleadings stage. MTD at 7-9, fns. 7, 9, 10, 13.

---

[5] Numerous courts have followed *Williams* and denied motions to dismiss in natural labeling cases. *See Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *22 (C.D. Cal. Dec. 6, 2016) (collecting authorities denying motions to dismiss in natural labeling cases). This Court is one of them, having followed *Williams* and denied a motion to dismiss where the plaintiffs alleged that labels such as "All Natural Ice Cream" were misleading due to the presence of synthetic ingredients. *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *7 (N.D. Cal. July 20, 2012) (rejecting the defendant's argument that the phrase "All Natural Flavors" cannot plausibly mean "all natural ingredients").

1   Those cases are a far cry from the deceptive "natural" labeling representations at issue in this case.

2   And, more importantly, this Court has already concluded that Plaintiff has offered a plausible

3   interpretation of "ingredients derived from natural sources."  In *Shank v. Presidio Brands, Inc.*,

4   2018 WL 510169 (N.D. Cal. Jan. 23, 2018), the court denied a motion to dismiss concerning

5   personal care products labeled as containing "only naturally derived ingredients."  Like the

6   Defendant in this case, the defendant in *Shank* claimed that a reasonable consumer could never be

7   misled by the "only naturally derived ingredients" representation.  The court rejected that

8   argument:

9

> The "only naturally derived ingredients" statement is another way of saying
> "100% naturally derived ingredients." As another court in this district recently
> observed, "[i]t is now well established in the Ninth Circuit that for purposes of a
> motion to dismiss a reasonable consumer could understand the statements '100%
> natural' or 'all natural' or 'natural' together with other terms implying 'all
> natural' to mean that a product does not contain any non-natural ingredients."

10

11

12

13

14  *Id.* at *8-9 (citing *Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23,

15  2017), *Williams*, 552 F.3d at 938-39, and *Balser*, 640 Fed. Appx. at 695-96). The court concluded

16  that the statement on the labels of defendant's products "could easily be interpreted by consumers

17  as a claim that all the ingredients in the product[s] were natural, which Shank has plausibly alleged

18  is false."  *Id.* (citing *Williams*, 552 F.3d at 939).

19

20          Similarly, in *Gregorio v. Clorox Company*, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018), the

21  defendant argued on a motion to dismiss that, as a matter of law, a product labeled "naturally

22  derived" was not deceptive because a reasonable consumer understands that house cleaning

23  products do not have at least some chemicals or have not undergone some synthetic processing.

24  Again, this Court rejected that argument, holding that "[i]t is not unreasonable as a matter of law

25  to expect a product labeled "naturally derived" to contain no synthetic ingredients."  *Id.* at *4-5.

26  ("the phrase ['naturally derived'] may be tantamount to, or at least could reasonably be understood

27

28

to mean 'all natural' or '100% natural.'') (citing *Pecanha*, 2018 WL 534299, at *3 and *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015)).

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) is also directly on point.  In *Jou*, the court denied a motion to dismiss claims concerning diapers labeled as "pure & natural."  *Id.* at *1.  Like Defendant in this case, the defendants in *Jou* claimed that a reasonable consumer could never be misled by the "pure & natural" representation.  The court rejected that argument, holding that "[w]hether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion."  *Id.* at *7.

Finally, in *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014), the defendant argued on a motion to dismiss that, as a matter of law, the label "100% naturally sourced sunscreen ingredients" was not deceptive because it only referred to specific ingredients.  The court rejected that argument, explaining that the reasonable consumer test "'must be evaluated from the vantage of a reasonable consumer,'" not the vantage of the defendant.  *Id.*  (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  "Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."  *Id.*  Hence, whether reasonable consumers would adopt the defendant's interpretation or the plaintiff's interpretation could not be resolved on the pleadings.  *Id.*

### b.  Plaintiff's Claims Readily Satisfy the Reasonable Consumer Test

Defendant engages in lengthy and protracted explanations for why it believes no reasonable consumer would be misled by its labeling and marketing.  MTD at 7-13.  But Defendant's arguments that labeling its Products as "derived from natural sources" and website

statements that its Products are "natural" are entirely consistent with the presence of purportedly "unnatural" or "synthetic' ingredients" are completely ridiculous.  *Id.*  These arguments are merely "smoke-and-mirrors" reflecting a misconstruction of Plaintiff's claims and based largely on self-serving and conclusory statements.

Defendant argues that Plaintiff's claims are implausible because "natural" is used as "an **adjective** to describe the **sources** from which the Purchased Products' **active** ingredients are **derived**."  MTD at 8 (original emphasis).  But Defendant is making arguments contrary to this Court's decisions in *Shank* and *Gregorio* where this Court took the view that the use of "natural" and "derived" on product labels could reasonably be understood to mean "all natural" or 100% natural" and thus contain no unnatural and/or synthetic ingredients.  *Shank*, 2018 WL 510169, at *8-9; *Gregorio*, 2018 WL 732673, at *4-5.  As a result, a reasonable consumer would be entirely justified in taking Defendant's labeling claims at face value that its Products labeled "derived from natural sources" contain no unnatural and/or synthetic ingredients.

Defendant goes on to argue that Plaintiff's claims are implausible because "the word 'derive' is to 'produce or obtain (a substance) from another'" and "thus, the phrase 'Active Ingredients Derived from Natural Sources' means that the 'Active Ingredients' were produced from another substance (the 'Natural Sources')."  MTD at 9.  But this definition – which Defendant argues all reasonable consumers would understand – would lead to an absurd result.  Indeed, under this definition, every conceivable ingredient would be considered "derived from natural sources" because everything, even synthetic ingredients, initially start with some substance found in nature.  This definition would thus render the term "derived from natural sources" meaningless.

Defendant's arguments regarding its website representations are equally unavailing.  MTD at 12-13.  Representations that a product's ingredients are "plant-based" and "completely natural" could be understood by a reasonable consumer that the products' ingredients are all natural and contain only natural ingredients.  This Court has concluded that whether consumers understand

"plant-based" to mean "all natural" presents a question of fact and is not appropriate for consideration on a motion to dismiss. *Duraflame, Inc. v. Hearthmark, LLC*, 2013 WL 12177870, *3 (N.D. Cal. Feb. 8, 2013) ("While unclear whether consumers understand 'all natural'…to be synonymous with 'plant-based,' the terms are similar enough in modern usage to present a question of fact."). And a reasonable consumer would certainly understand the word "completely" to mean "total" or "all." Thus, claiming that a product has "completely natural ingredients" means that the products are "all natural," which, as already discussed, a reasonable consumer would clearly understand to mean that the product does not contain any unnatural ingredients.

Defendant's claims that its website statements including "a product's scents blend 'naturally' into a kitchen are nothing more than non-actionable 'puffery'" are futile. MTD at 11-12, 16. First, in *Shank*, this Court already ruled that use of the words "natural, "naturally," and "naturally derived" on a defendant's website is non-actionable puffery "since a reasonable consumer could interpret [defendant's] statements as a definitive representation that its [] products contain only naturally derived ingredients, and do not contain synthetic ingredients." 2018 WL 510169, at *9 (collecting authorities). [6] Second, Defendant is again advancing arguments that cannot be reconciled with this Court's decision in *Jou*. *Id.* at *7. (Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.").

---

[6] This Court has held that the terms "'nourish naturally" are not mere puffery and "a reasonable consumer could interpret them to mean that a product is mostly natural. *Gasser,* 2017 WL 4773426, at *5. Many other courts have likewise rejected similar puffery arguments for dismissal in natural labeling cases. *E.g.*, *Janney v. General Mills*, 2014 WL 1266299, at *5 (N.D. Cal. Mar. 26, 2015) (following *Jou* and rejecting puffery argument); *Parker*, 2013 WL 4516156, at *6 ("All Natural" is an affirmative claim about a product's qualities, and it does not amount to mere puffery because it is not outrageous and generalized"); *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) ("At the present stage of litigation, I cannot say that a reasonable consumer could not interpret 'Naturals' to be a factual claim about the Suave NATURALS line of products").

### c.      Plaintiff's Website Allegations Satisfy Rule 9(b)

Defendant claims that Plaintiff's allegations regarding its website statements do not satisfy Fed. R. Civ. P. 9(b).  MTD at 10.  Not so.  To satisfy Rule 9(b), the complaint must allege the "who, what, when, where, and how" of the circumstances constituting fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).  The purpose of Rule 9(b) is "'to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Jou*, 2013 WL 6491158, *4 (quoting Kearns, 567 F.3d at 1124).  "When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false."  *Id.*  The allegations regarding Defendant's website here easily meet this standard:

- **Who:** "This is a class action lawsuit against Defendant Williams-Sonoma, Inc. for selling its household and personal care products as 'natural' when, in fact, they contain unnatural and/or synthetic ingredients."  *Complaint* ¶ 1.

- **What and Where:** "Defendant cultivates the Williams Sonoma image as a natural, non-synthetic, health and eco-friendly brand through numerous [website] statements" that its products contain "completely natural ingredients," "blend[] into the kitchen naturally," and have "plant-based ingredients.  *Id.* ¶ 27-30.

- **When:** During the class period alleged herein, Plaintiff purchased several Williams Sonoma Products because he saw and relied on the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products are "natural" and contain "Active Ingredients Derived from Natural Sources."  *Id.* ¶¶ 15, 16. "He understood this to mean that he was purchasing natural products that did not contain any unnatural and/or synthetic ingredients."  *Id.* ¶ 16.

- **How:** "Defendant falsely, misleadingly, and deceptively labels the Products as 'natural' and containing 'Active Ingredients Derived from Natural Sources.'  The Products' ingredients are not 'derived from natural sources' because they contain unnatural and/or synthetic ingredients…*Id.* ¶ 7.

As a result, the allegations here are more than sufficient under *Kearns* and *Jou.*

### d.   Plaintiff's Claims Regarding the Statements on Defendant's Website are Relevant to His Claims

Finally, Defendant claims that Plaintiff seeks to combine the packaging statement with "disparate, unspecific, and nonactionable website statements to state his claims."  MTD at 12-13.

But it defies common sense to argue that no person could read the website representations "plant-based ingredients," "completely natural ingredients," and "naturally" combined with the product statement "Active Ingredients Derived from Natural Sources" and conclude that the Defendant's products do not contain any "unnatural" or "synthetic" ingredients, or that all ingredients are "derived from natural sources." *See* Section III.C.1.b-c, *supra*.  And the *Complaint* contains numerous allegations that Plaintiff visited Defendant's website and relied on Defendant's "natural" representations. *See Complaint* ¶¶ 16, 26, 27.  Thus, a reasonably consumer could conclude that the products are all natural and contain all-natural ingredients.  Nevertheless, whether Plaintiff and the Class Members were misled and relied on Defendant's website statements is a question of fact that cannot be decided at the motion to dismiss stage.  *See* Section II.C.1.a., *supra*.

All these arguments fail because they rest solely on Defendant's proffered inferences (largely from facts outside the pleadings) under a standard where the Court must accept all factual allegations in the complaint as true and draw all possible inferences in favor of Plaintiff.  And whether reasonable consumers would adopt the Defendant's interpretation or the Plaintiff's interpretation cannot be resolved on a Rule 12(b)(6) motion.  *Jou*, 2013 WL 6491158 at *1; *Fagan*, WL 92255, at *2.

Accordingly, Plaintiff has adequately alleged Defendant's "derived from natural ingredients" claim and related marketing would mislead a reasonable consumer and therefore violate the CLRA, the FAL, and the UCL.

### 2. Plaintiff States a Claim Under the Unlawful And Unfair Prongs of the UCL

Defendant is correct that Plaintiff's unlawful and unfair claims under the UCL are premised on violations of the CLRA and FAL.  MTD at 13.  UCL, CLRA, and FAL claims are all governed by the "reasonable consumer" test.  *Williams*, 552 F.3d at 938.  As discussed at length in Section III.C.1.a., *supra*, a reasonable consumer's interpretation of a labeling claim is not something that can be determined at the motion to dismiss stage.   Regardless, a reasonable

consumer would be entirely justified in taking Defendant's representations and labeling claims at

face value that its Products labeled "natural" and "derived from natural sources" contain no

unnatural and/or synthetic ingredients.   *See* Section III.C.1., *supra*.  Because Plaintiff has

demonstrated violations under both statutes, Plaintiff can plausibly state claims under the

"unlawful" and "unfair" prongs of the UCL.

### 3. Plaintiff States a Claim Under the Magnuson-Moss Warranty Act

#### a. Plaintiff Has Alleged Warranty Claims Under California Law

Plaintiff agrees with Defendant that this Court's disposition of the state law warranty

claims determines the disposition of the MMWA claims.  *Clemens v. DaimlerChrysler Corp.*, 534

F.3d 1017, 1022 (9th Cir. 2008).  Because Plaintiff has alleged viable state law warranty claims,

their MMWA claims must not be dismissed.  *See* I.4., *infra*.

#### b. Plaintiff Has Alleged a "Written Warranty" Under the MMWA

Defendant, however, argues that the MMWA claim would also fail because the *Complaint*

does not allege a "written warranty" under the MMWA.  MTD at 14-15.   Defendant is wrong.

The MMWA broadly defines covered consumer products as "any tangible personal property . . .

normally used for personal, family or household purposes…." 15 U.S.C. §2301(1).   Moreover, the

Federal Trade Commission, which is vested with rulemaking authority under the MMWA, has

made clear that consumer products covered under the MMWA include products used for

"personal, family, or household purposes...."  40 Fed. Reg. 25721, 25722 (1975).

Defendant's personal and household products are consumer products covered under the

MMWA.  40 Fed. Reg. 25721.  Moreover, the representations made by Defendant with respect to

the "natural" and "derived from natural sources" contents of its products constitute written

warranties under the MMWA insofar as they "relate to the nature of the material" and make

promises and affirmations of fact as to the quality and contents of the product — that the products

are "natural."  15 U.S.C. § 2301(6)(A).

### c. Plaintiff Provided Adequate Notice

Defendant's final arguments regarding pre-litigation notice also must fail.  Plaintiff's February 15, 2018 CLRA Notice Letter provided notice of the alleged breach and afforded Defendant a reasonable opportunity to cure.  *See* Section III.C.B.5.a., *infra*; Dkt. 17 at Ex. J. Allegations of notice have been incorporated by reference into Plaintiff's MMWA claims.  *See id.* at ¶ 86.  Regardless, a lack of notice and opportunity to cure is not fatal to a MMWA cause of action.  *See Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1039 (9th Cir. 2011).

### 4. Plaintiff Sufficiently States Causes of Action for State Warranty Claims

### a. Defendants Received Sufficient Notice

Defendant moves to dismiss Plaintiff's state warranty claims based upon the supposed absence of pre-suit notice.  MTD at 15-16.  Contrary to this assertion, Plaintiff's February 15, 2018 CLRA Notice Letter specifically states that Defendant has "***breached an express warranty*** to those who purchased the Products."  Dkt. 17 at Ex. J (emphasis added).  Allegations of notice have been incorporated by reference into Plaintiff's claims for breach of express warranty and breach of the implied warranty of merchantability.  *See id.* at ¶¶ 95, 101.  Thus, Defendant clearly received sufficient pre-suit notice of Plaintiff's state warranty claims.

### b. Plaintiff Sufficiently States an Express Warranty Claim

"A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Gasser*, 2017 4773426, at *6.  Here, Plaintiff alleges an express warranty that the Products are comprised solely of ingredients that are "natural" or "derived from natural sources," as a reasonable consumer would understand those terms.  Numerous courts adjudicating natural labeling cases have held that "natural" labeling is a "description of goods," and thus an actionable warranty.  *E.g., Gregorio*, 2018 WL 733673, at *5 ("naturally derived" an express warranty);

Gasser, 2017 4773426, at *6 (collecting authorities); *Brown v. The Hain Celestial Grp., Inc.*, 913

F.Supp.2d 881, 900 (N.D. Cal. 2016) ("Pure, Natural & Organic" an express warranty); *Brenner*,

2016 WL 8192946, at *8 ("Plaintiff has plausibly alleged that the 'Natural Clean' label is false

and has otherwise adequately plead the elements of an express warranty claim."). The natural

labeling is part of the bargain because Plaintiff alleges that they would not have purchased the

products on the same terms if they had known the truth about the unnatural ingredients.

*Complaint* ¶¶ 11, 16, 100; *see also Gregorio*, 2018 WL 733673, at *2; *Gasser*, 2017 WL 4773426,

at *6. Finally, the warranty was breached because the challenged products contain ingredients that

are unnatural and synthetic and "do not have the characteristics, uses, or benefits, as promised."

*Complaint* ¶ 100.

Defendant also argues that Plaintiff's warranty claims based on purported website

statements fail because many of the alleged representations are "puffery." MTD at 16. But

Defendant's website statements are not puffery. *See* Sections III.C.2. and III.C.4.b., *supra*.

**c.  Plaintiff Sufficiently States A Claim For Breach of the Implied
Warranty of Merchantability**

Defendant argues that Plaintiff has failed to state a claim for breach of an implied warranty

because Plaintiff has not alleged "facts establishing that the product is unfit for ordinary use."

MTD at 17. But Defendant incorrectly states the law. The U.C.C.'s provision for implied

warranties of merchantability, as adopted by California, goes beyond fitness for consumption.

Goods must: "(a) pass without objection in the trade under the contract description; …(c) [be] fit

for the ordinary purposes for which such goods are used; [and]…(f) conform to the promise or

affirmations of fact made on the container or label if any." U.C.C. § 2-314.

Defendant claims that Plaintiff must first establish a violation of subsection (c) above in

order to state an implied warranty claim. Defendant's view of an implied warranty is thus under-

inclusive. The U.C.C. comments provide the following:

Paragraph (f) applies . . . wherever there is a label or container on which representations are made, even though the original contract, either by express terms or usage of trade, may not have required either the labeling or the representation. This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container.

U.C.C. § 2-314, comments; *see also Perez v. Monster, Inc.*, 149 F. Supp. 3d 1176, 1185 (N.D. Cal. 2016) (plaintiff stated claim for breach of implied warranty based on "false promise or affirmation of fact on the container or label."); *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *11 (C.D. Cal. June 6, 2016) ("Although [Costco] argues that [the Coconut Oil] is fit for ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.' . . . Accordingly, Defendant's Motion to dismiss Plaintiffs' implied warranty claim is DENIED.") (citing Cal. Com. Code § 2314(2)(f)); *Zakaria v. Gerber Prods. Co.*, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (finding that "Plaintiff's breach of implied warranty claim . . . based on alleged affirmative representations made by Defendant on the labeling of the formula . . . appropriate under Cal. Commercial Code § 2314(2)(f)").

Here, Plaintiff alleges that the Products contained misleading representations on their labels and therefore do "not conform to the promise or affirmations of fact made on the container or label." *Complaint* ¶ 104. As to Defendant's second argument, that the implied warranty claim fails for the same reasons as Plaintiff's express warranty claim (MTD at 18), *see* Section III.C.4.b. *supra*. Thus, Plaintiff states a claim for breach of implied warranty.

### 5. Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed

Defendant makes a number of arguments as to why Plaintiff's unjust enrichment claim should be dismissed. First, Defendant argues that Plaintiff's quasi-contract claim fails because he states a separate claim for breach of express warranty, and under California law there cannot be a

claim based on quasi-contract where there exists between the parties a valid express contract covering the same subject matter.  MTD at 18-19.  However, under Fed. R. Civ. P. 8(d) and Ninth Circuit law, a party is permitted to assert inconsistent alternative claims for relief.  *Sloan v. GM LLC*, 2017 WL 3283998, at *10 (N.D. Cal. Aug. 1, 2017); *In re Safeway Tuna Cases*, 2016 WL 3743364 at *2 (N.D. Cal. July 13, 2016).

Here, Plaintiff has adequately pled a quasi-contract claim.  Plaintiff alleges that Defendant made misleading representations about the Products and was unjustly enriched as it retained monies paid to it at the expense of deceived consumers.  *Complaint* ¶¶ 111-115.  This is sufficient under the binding authority of *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (plaintiffs' statement that defendant "had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" was sufficient to state a quasi-contract claim).

Second, Defendant argues that Plaintiff's unjust enrichment claim would still fail because "the sole label statement and disparate website statements are neither false nor misleading."  MTD at 19.  This argument rehashes Defendant's arguments concerning the reasonable consumer standard, and Defendant does not offer any independent basis to dismiss the claim.  Accordingly, the Court should deny Defendant's request to dismiss Plaintiff's unjust enrichment claim for the same reasons discussed at length and set forth in Section III.C.2., *supra*.

### 6.  Plaintiff's Negligent Misrepresentation Claim Should Not Be Dismissed

#### a.  The Economic Loss Rule Does Not Apply to Plaintiff's Negligent Misrepresentation Claim

Defendant contends that Plaintiff cannot state a claim for negligent misrepresentation because he cannot seek remedies for negligence as to pure economic losses.  MTD at 19-20.  That is wrong.  The economic loss rule does not bar claims for negligent misrepresentation because "California law classifies negligent misrepresentation as a species of fraud, for which economic

loss is recoverable." *Zakaria*, 2015 WL 3827654, at *11; *Hannibal Pictures, Inc. v. Sonja Prods.*

*Co.*, 432 Fed. App'x 700, 701 (9th Cir. 2011) (Jury verdict in favor of a negligent

misrepresentation claim was not precluded by the economic loss rule where "one party has lied to

the other."); *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir.

2008) (Negligent misrepresentation is a "species of fraud" under California law, for which

"economic loss is recoverable.").

### b.  Plaintiff Adequately States a Claim for Negligent Misrepresentation

Defendant's arguments for dismissal of the negligent misrepresentation claim again

rehases its arguments concerning the reasonable consumer standard, and Defendants do not offer

any independent basis to dismiss the claim.  MTD at 20-21.  The Court should therefore deny

dismissal of the negligent misrepresentation claim for the same reasons set forth above.  See

Section III.C.2., *supra.*

### 7.  Plaintiff Adequately States a Claim for Fraud

Defendant's arguments for dismissal of the fraud claim again rehases its arguments

concerning the reasonable consumer standard and allegations regarding "puffery."  But

Defendants do not offer any independent basis to dismiss the claim.  MTD at 21.  The Court

should therefore deny dismissal of the negligent misrepresentation claim for the same reasons set

forth above.  *See* Sections III.C.2. and III.C.4.b., *supra.*

### D.    Plaintiff's Claims For Equitable Relief Can Be Pled in the Alternative to Any Legal Relief

Defendant argues that consumers may only seek equitable relief under the UCL, FAL,

CLRA, unjust enrichment, negligent misrepresentation, and fraud claims when there is no legal

remedy available to them.  MTD at 21-22.  As this Court recently held, this is not the law: "this

Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing

equitable claims in the alternative to legal remedies at the pleadings stage." *Adkins v. Comcast*

*Corp.*, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) (citing *Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552, at *3-4 (E.D. Cal. June 12, 2015); *see Vicuna*, 2012 WL 1497507, at *3 (a litigant is entitled to assert inconsistent theories of recovery on both legal and equitable grounds at the pleadings stage).[7]   Indeed, the UCL specifically allows for the equitable remedies to be sought alongside any legal remedies that may be available: "Unless otherwise specifically provided, the remedies or penalties provided by this chapter are cumulative to each other, and to the remedies or penalties available under all other laws of this state."  Cal. Bus & Prof. Code § 17205.

Plaintiff suggests that the primary authority relied on by Defendant misinterprets California law.  *Munning v. Gap, Inc.* announced a sweeping rule that denies consumers access to the UCL and CLRA when there is some other, legal route for relief.  238 F. Supp. 2d 1195, 1204 (N.D. Cal. 2017).  This turns the rule, and the purpose of these remedial statutes, on their heads. *Munning* is based on a California decision that recognized some specific statutory remedies may be exclusive of other remedies, including the UCL and CLRA.  *See Cabrales*, 2015 WL 3731552, at *4.  The legal remedies pursued by Plaintiff are not exclusive and as such do not preclude relief under the UCL and CLRA.  *Id.*  Thus, Plaintiff's claims for equitable relief for his UCL, FAL, CLRA, unjust enrichment, negligent misrepresentation, and fraud should not be dismissed.

### 1.  Plaintiff's Request For Disgorgement of All Revenues Obtained as a Result of Defendant's False Advertising Should Not Be Dismissed

Defendant incorrectly states that Plaintiff is seeking "non-restitutionary disgorgement of 'all revenues.'"  MTD at 22-23.  That is not the case.  Plaintiff and the Class are seeking

---

[7] *See also Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085, at *9, 2018 U.S. Dist. LEXIS 49731, at *26 (N.D. Cal. Mar. 26, 2018) ("This Court joins the many other courts, however, that have reached the opposite conclusion, finding no bar to the pursuit of alternative remedies at the pleading stage."); *Covell v. Nine West Holdings, Inc.*, 2018 WL 558976, at *8 (S.D. Cal. Jan. 25, 2018) (rejecting same argument Defendant makes here); *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800 at *10 (N.D. Cal. Dec. 28, 2012) (same); *Cortez v. Global Ground Support, LLC*, 2009 WL 4282076, at *4 (N.D. Cal. Nov. 25, 2009) (same).

restitutionary disgorgement of Defendant's net profits it received directly from the Plaintiff Class Members.  *See Complaint* ¶ 85(b) (requesting an Order to "disgorge all revenues obtained as a result of violations of the UCL").  The broad authority conferred upon the Court to measure and award restitution in false advertising cases such as this does permit the Court to order, among other things, disgorgement of gross receipts and/or profits.  The court in *Spann v. J.C. Penney Corp.*, 2015 WL 1526559 (C.D. Cal. 2015), confronting the issue of available remedies in false advertising cases claiming violations of California's UCL and FAL, found that "restitutionary disgorgement" is another available remedy to false advertising plaintiffs in UCL and/or FAL cases, including the return of any monies that the defendant retailer received directly from the plaintiff class members, minus "the cost basis for the products purchased."  *Spann* at *8.  In other words, net profits.  The court found that the disgorgement of all net profits may "yield a proper measure of restitution" in cases such as this.  *Id.*[8]  As a result, Plaintiff's request for disgorgement of Defendant's net profits should not be dismissed.

### E.   Plaintiff's Claims For Damages Arising From The Website Statements Meet The CLRA Notice Requirements

Defendant argues that Plaintiff's claims for damages arising from the website damages should be dismissed because they do not meet the CLRA notice requirements.  MTD at 23-24.  But the cases cited by Defendant support the fact that Plaintiff provided adequate notice of the alleged website statements.  In *Ruszecki v. Nelson Bach USA LTD.,* 2015 U.S. Dist. LEXIS

---

[8] *See also, e.g., Cortez v. Purolator Air Filtration Prods. Co.*  23 Cal.4th 163, 182 (2000) (concurring opinion); *Fletcher v. Security Pac. Nat'l Bank*, 23 Cal.3d 442, 450 (1979) ("The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent."); *People v. Thomas Shelton Powers, M.D., Inc.*, 2 Cal.App.4th 330, 340 (1992) ("there is little question but that the broad range of remedies provided for [in §17203] ***includes restitution and/or disgorgement of profits***. . . . [I]t is settled that such remedies are proper in an action brought for false advertising.") (emphasis added); *Matoff v. Brinker Restaurant Group*, 439 F.Supp.2d 1035, 1038-1039 (C.D. Cal. 2006) ("Disgorgement of profits is available under the UCL only to the extent that it is restitutionary.").

151946 (S.D. Cal. June 25, 2015), the court dismissed the alleged false claims from the website that the products were artificial and not approved by the FDA because "these alleged violations from the CLRA are distinct from the allegation specified in the letter that [the products] have no efficacy beyond that of a placebo." *Id.* at *14. That is clearly not the case here. Plaintiff's February 15, 2018 CLRA letter alleges that Defendant's products are not "natural" because they "contain unnatural and/or synthetic ingredients." Dkt. 17 at Ex. J. It states that Defendant "participated in the marketing and sale" of certain Products and that Plaintiff purchased the Products in reliance on Defendant's false and misleading representations that its products' ingredients are "derived from natural sources." *Id.* As such, Defendant's website statements that its products have "plant-based ingredients," contain "completely natural ingredients," and "blend into the kitchen naturally" are clearly similar to Plaintiff's CLRA letter allegations that Defendant's products are not "natural" and "derived from natural sources."[9]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. Alternatively, if the Court determines the pleadings are deficient, Plaintiff respectfully requests leave to amend.

---

[9] On September 4, 2018, Plaintiff sent a revised CLRA notice letter to Defendant specifically identifying these website statements as false and misleading.

1                          **ORLOWSKY LAW, LLC**

2

3   Dated:  September 4, 2018     By       /s/ *Daniel J. Orlowsky*

4                                     DANIEL J. ORLOWSKY

5                             Daniel J. Orlowsky (*Pro Hac Vice*)
                            7777 Bonhomme Ave., Suite 1910

6                             St. Louis, MO  63105
                            Phone:  314-725-5151

7                             Fax:  314-455-7375
                            *dan@orlowskylaw.com*

8

9                             Adam M. Goffstein (*Pro Hac Vice*)
                            **GOFFSTEIN LAW, LLC**

10                             7777 Bonhomme, Suite 1910
                            St. Louis, Missouri 63105

11                             Phone: (314) 725-5151
                            Fax:    (314) 455-7278

12                             *adam@goffsteinlaw.com*

13                             *Co-Interim Class Counsel*

14                             James A. Morris, Esq. (CSBN 296852)
                            Shane A. Greenberg, Esq. (CSMN 210932)

15                             **MORRIS LAW FIRM**
                            4111 W. Alameda Avenue, Suite 611

16                             Burbank, CA 91505
                            Tel:  (747) 283-1144

17                             Fax:  (747) 283-1143
                            *jmorris@jamlawyers.com*

18                             *jreenberg@jamlawyers.com*

19                             *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28